USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/30/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIESEL S.p.A.; and DIESEL U.S.A., INC.,

Plaintiffs,

-against-

DIESEL POWER GEAR, LLC,

Defendant.

1:19-cv-9308-MKV

OPINION AND ORDER GRANTING IN
PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Diesel S.p.A. and Diesel U.S.A., Inc. (collectively, "Plaintiffs") bring this

action under the Lanham Act and New York state law against Defendant Diesel Power Gear,

LLC, alleging infringement of registered trademarks, trademark dilution, federal unfair

competition, and unfair competition under New York common law.  (*See* Complaint ("Compl.")

[ECF No. 1]).  The parties have cross moved for summary judgment on the issue of liability.

[ECF No. 36]; [ECF No. 38].

## BACKGROUND

Plaintiffs are the owner and exclusive licensee of the DIESEL brand and DIESEL Marks.

(Joint Local Rule 56.1 Statement of Undisputed Facts ("JSUF") [ECF No. 35] ¶¶ 1–2).  Plaintiffs

design, manufacture, market, and distribute apparel, footwear and accessories for men, women

and children, along with home and lifestyle products, among other things, under or in connection

with trademarks incorporating the word "diesel."  (JSUF ¶ 1).  Plaintiffs and their DIESEL

Products have generated millions of dollars of annual sales in the United States.  Plaintiffs have

expended millions of dollars in advertising and promoting their DIESEL Products, and have been

prominently featured in a number of press publications, including, but not limited to, *Details*,

*GQ*, *In Style*, *Interview*, *Nylon*, *The New York Times*, *Cosmopolitan*, *W*, *Elle*, and *Esquire*. (JSUF ¶¶ 15–19).

Diesel S.p.A. has applied for and been granted the DIESEL Registrations covering the DIESEL Marks, many of which are incontestable.  (JSUF ¶ 23).  Plaintiffs have also instituted an active enforcement program, through which they vigorously enforce their rights in and to the DIESEL Marks.  (JSUF ¶ 27).

Diesel Power Gear, formed in 2013, is owned by David Sparks, David Kiley, and Josh Stuart, all of whom were, or currently are, on a Discovery Channel television show entitled "Diesel Brothers."  (JSUF ¶ 28).  Each month, Defendant hosts a sweepstakes contest whereby consumers are entered into a drawing to win a custom-built diesel truck for every five dollars spent on apparel and gear on dieselpowergear.com.  (JSUF ¶¶ 30–32).  Defendant's principal revenue stream comes from sales of apparel and gear promoting and used for recreational diesel trucks.  (JSUF ¶ 29).

Defendant uses, or has used, the word "diesel" on or in connection with its online retail services, apparel, accessory products, and business.  (JSUF ¶¶ 35–36).  Defendant also uses the alleged infringing marks in connection with its marketing and promotion of its products, including via social media promotions, and as paid keywords.[1]  (JSUF ¶¶ 50–51).

In 2015, Defendant filed an application to register the trademark DIESEL POWER GEAR with the United States Patent and Trademark Office ("USPTO") for use on apparel. (JSUF ¶ 55).  Plaintiffs opposed the application, (JSUF ¶¶ 55–56), and Defendant failed to respond to Plaintiffs' opposition.  The Trademark Trial and Appeal Board (the "TTAB") entered

---

[1] Keyword bids are bids placed in a pay-per-click auction to help secure ad placement at the top of search results. Online businesses bid on specific keywords or keyword groups to secure ad space for important terms relative to their business.  *See 1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 110 (2d Cir. 2021).

a notice of default on September 21, 2016.  (JSUF ¶ 57).  Defendant failed to answer the Notice

of Default, and on November 14, 2016, the TTAB entered judgment against Defendant,

sustained the opposition and refused the registration in light of Defendant's default (the "11/14

Judgment").  (JSUF ¶ 58).

 In 2017, Defendant again applied to register the trademark DIESEL POWER GEAR with

the USPTO for the use on apparel.  (JSUF ¶¶ 59–60).  Plaintiff Diesel S.p.A. opposed the second

application, and on September 16, 2019 the TTAB granted summary judgment to Plaintiff Diesel

S.p.A. regarding the DIESEL POWER GEAR trademark, finding that "the elements of claim

preclusion" had been satisfied, given the 11/14 Judgment.  (JSUF ¶ 61).  At the same time,

Defendant also applied to register the trademark DIESELSELLERZ with the USPTO for

clothing.  (JSUF ¶ 60).  Plaintiff Diesel S.p.A. likewise opposed the DIESELSELLERZ mark

and that proceeding is currently pending before the TTAB.  (JSUF ¶ 62).

 On July 21, 2017, Plaintiff Diesel S.p.A. sent a cease-and-desist letter to Defendant

related to its use of the DIESEL POWER GEAR mark.  (JSUF ¶ 63).

 Plaintiffs commenced this action against Defendant in October 2019.  Plaintiffs allege the

following causes of action: (1) infringement of registered trademarks under section 32(a) of the

Lanham Act, 15 U.S.C. § 1114, (Compl. ¶¶ 45–55); (2) trademark dilution under the Lanham

Act section 43(c), 15 U.S.C. § 1125(c), (Compl. ¶¶ 56–65); (3) federal unfair competition under

the Lanham Act section 43(a), 15 U.S.C. § 1125, (Compl. ¶¶ 66–73); and (4) unfair competition

under New York State common law, (Compl. ¶¶ 74–80).

 Discovery is closed [ECF No. 31] and the parties now cross move for summary judgment

on the issue of liability.  [ECF No. 36]; [ECF No. 38].  The parties submitted a joint local rule

56.1 statement of undisputed facts.  (*See* JSUF).  In support of its motion, Defendant filed the

Declaration of Joseph Shapiro, counsel for Defendant, with several exhibits, (Shapiro Decl. [ECF

Nos. 40-2–40-5, 45]), the Declaration of Caleb Perkins, Chief Operating Officer for Defendant,

(Perkins Decl. [ECF No. 40-1]), a local 56.1 statement, (Def. 56.1 Stmt. [ECF No. 40]), and a

memorandum of law, (Def. Mot. [ECF No. 38]).  In support of their motion, Plaintiffs filed the

declaration of Kerry Brownlee, counsel for Plaintiffs, with several exhibits, (Brownlee Decl.

[ECF No. 42]), the declaration of Stefano Iesurum, the head of Plaintiff Diesel S.p.A.'s legal

department, with several exhibits, (Iesurum Decl. [ECF No. 39]), a local 56.1 statement, (Pl. 56.1

Stmt. [ECF No. 43]), and a memorandum of law, (Pl. Mot. [ECF No. 37]).  In opposition to

Defendant's motion, Plaintiffs filed a local rule 56.1 counterstatement, (Pl. 56.1 Response [ECF

No. 47]), and a memorandum of law, (Pl. Opp'n [ECF No. 46]).  In opposition to Plaintiffs'

motion, Defendant filed a local rule 56.1 counterstatement, (Def. 56.1 Response [ECF No. 49]),

and a memorandum of law, (Def. Opp'n [ECF No. 48]).  Both sides filed replies, (Def. Reply

[ECF No. 52]; Pl. Reply [ECF No. 51]), and Plaintiffs filed a response to Defendant's local rule

56.1 statement of additional facts, (Pl. 56.1 Reply [ECF No. 50]).

## **LEGAL STANDARD**

A party is entitled to summary judgment when there is no "genuine dispute as to any

material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.

Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The

moving party has the initial burden of demonstrating the absence of a disputed issue of material

fact. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the motion for summary judgment

is properly made, the burden shifts to the non-moving party, which "must set forth specific facts

showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  The Court must view

the record in the light most favorable to the non-moving party, *Tolan v. Cotton*, 572 U.S. 650,

657 (2014) (citation omitted), and must "resolve all ambiguities and draw all reasonable

inferences against the movant," *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (citation omitted).

However, a party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). "Mere conjecture or surmise by the nonmovant in support of his or her case is inadequate." *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2020 WL 6712307, at *3 (S.D.N.Y. Nov. 16, 2020) (quoting *Am. Home Assurance Co. v. Jamaica*, 418 F. Supp. 2d 537, 546 (S.D.N.Y. 2006)).

## DISCUSSION

### I.   The 11/14 Judgment Precludes Defendant From Relitigating The Issues Of Likelihood Of Confusion and Dilution Between Plaintiffs' DIESEL Marks And Defendant's DIESEL POWER GEAR Mark

As a preliminary matter, under the doctrine of claim preclusion, the 11/14 Judgment by the TTAB precludes Defendant from relitigating the issues of likelihood of confusion and dilution between the DIESEL marks and Defendant's DIESEL POWER GEAR mark. Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Cayuga*

*Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).  Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).  The Second Circuit has consistently held that a default judgment is deemed as conclusive an adjudication of the merits of an action as a contested judgment.  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 160 (2d Cir. 2005); *Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." (quoting Morris v. Jones, 329 U.S. 545, 55–51 (1947))).

Generally, administrative proceedings may have res judicata effect if they are adjudicative in nature. *See*, *e.g.*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).  The Second Circuit has never specifically addressed whether res judicata may apply to trademark opposition proceedings before the TTAB.  Nonetheless, at least one other Circuit has concluded that trademark opposition proceedings before the TTAB can have res judicata effect, even if the final judgment in the opposition proceeding was a default judgment.  *See Int'l Nutrition Co. v. Horphag Rsch., Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000).  Moreover, the Supreme Court has held that the common-law doctrine of collateral estoppel, or issue preclusion, applies to TTAB decisions.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015).[2]   Although *B & B Hardware* concerned issue preclusion rather than claim preclusion, the Court is guided by the Supreme Court's determination that "absent a contrary indication,

---

[2] Even before the Supreme Court pronouncement in *B & B Hardware*, the Second Circuit had held that collateral estoppel may apply to TTAB proceedings.  *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 736 (2d Cir. 1991).

Congress presumptively intends that an agency's determination . . . has preclusive effect," as well as its reliance in part on the Restatement (Second) of Judgments for this proposition. *Id.* at 148, 151. Accordingly, the Court finds that TTAB determinations can have res judicata effect.

For claim preclusion to apply, the later suit must involve the same cause of action as the earlier suit. *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted). "Suits involve the same claim (or 'cause of action') when they arise from the same transaction, or involve a common nucleus of operative facts." *Lucky Brand Dungarees*, 140 S. Ct. at 1595 (citations and internal quotation marks omitted). In *B & B Hardware*, the Supreme Court held that a "likelihood of confusion [analysis] for purposes of registration is the same standard as [a] likelihood of confusion [analysis] for purposes of infringement." *B & B Hardware*, 575 U.S. at 154. It continued that "[i]f a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation." *Id.* at 156.

Here, the TTAB adjudicated a trademark opposition proceeding between Plaintiff Diesel S.p.A. and Defendant. (JSUF ¶¶ 59–61). That adjudication comprised of two counts: likelihood of confusion, and dilution, as between the DIESEL Marks and Defendant's DIESEL POWER GEAR mark. (JSUF ¶¶ 55–56; (Brownlee Dec., Ex. C ("Diesel S.p.A.'s Notice of Opposition"), ¶ 7). The TTAB rendered the 11/14 Judgment in favor of Diesel S.p.A., by default, on both counts. (JSUF ¶ 58). In the 11/14 Judgment, the TTAB refused registration of Defendant's applications for DIESEL POWER GEAR for "[a]thletic shirts; Baseball caps and hats; Camouflage shirts; Graphic T-shirts; Hats; Hooded sweat shirts; Long-sleeved shirts; Shirts; Shirts and short-sleeved shirts; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Sports caps and hats; T-shirts; Wristbands." (Diesel S.p.A.'s Notice of Opposition ¶ 7).

Similarly, at issue here is Defendant's use of the infringing marks on or in connection with Defendant's apparel and accessory products.  (*See* JSUF ¶ 35; Complaint, ¶ 23; Pl. Reply at 6). Accordingly, the prior TTAB adjudication between Plaintiff Diesel S.p.A. and Defendant involved the same cause of action that is at issue here.  *See Cesari S.r.L. v. Peju Province Winery L.P.*, No. 17 CIV. 873(NRB), 2017 WL 6509004, at *3 (S.D.N.Y. Dec. 11, 2017) (preclusion where the defendant applied for a registration with respect to wines and then used the mark with respect to wine); *Buzz Seating, Inc. v. Encore Seating, Inc.*, No. 1:16-CV-1131, 2017 WL 2619340, at *6 (S.D. Ohio June 16, 2017) (preclusion applied where the defendant applied for a registration for "Office furniture, including chairs" and used the mark on "executive chairs"); *cf. Dille Fam. Tr. v. Nowlan Fam. Tr.*, 276 F. Supp. 3d 412, 433 (E.D. Pa. 2017) (No preclusive effect where the plaintiff used a mark "in a much wider range of goods and services" than what was at issue in the TTAB proceeding).

By virtue of the 11/14 Judgment, Defendant is thus precluded from re-litigating before this Court the issues of whether Defendant's alleged infringing mark DIESEL POWER GEAR is likely to cause confusion or dilute the DIESEL marks.  The default judgment entered by the TTAB against Defendant in the initial opposition proceeding acts as a final judgment on the merits.  *See Norex Petroleum*, 416 F.3d at 160.  Plaintiff Diesel S.p.A. opposed Defendant's application on the grounds that its DIESEL POWER GEAR trademark would cause confusion with and dilute Plaintiffs' marks.  (Diesel S.p.A.'s Notice of Opposition ¶¶ 9–16).  Defendant had the opportunity to litigate the issues of likelihood of confusion and dilution in that TTAB proceeding.  *See Lucky Brand Dungarees*, 140 S. Ct. at 1594.  Rather than litigate these issues, Defendant opted to default on its own trademark application, (JSUF ¶¶ 57–58), and proceed with the use of its DIESEL POWER GEAR mark anyway.  Defendant cannot now seek to relitigate this issue.  Therefore, Plaintiffs are entitled to summary judgment on their trademark

infringement and dilution claims with respect to Defendant's use of the DIESEL POWER GEAR mark.

Defendant raises several arguments to assert that it is not precluded from relitigating this issue, but none persuade the Court. Defendant first asserts that Plaintiffs waived their preclusion claim by not raising it earlier in the litigation. (Def. Opp'n at 7). However, to support this argument, Defendant merely cites to one case in this Circuit, *Acosta-Pelle v. New Century Financial Services, Inc.*, No. 09 CIV. 2631(SAS), 2009 WL 4927634 (S.D.N.Y. Dec. 17, 2009). However, the *Acosta-Pelle* case actually undermines Defendant's argument since in that case, the Court found that Defendant's claim preclusion argument was *not* waived because, as here, the opposing party had a chance to respond to the argument in connection with briefing of summary judgment. *Id.* *3. Moreover, Courts in this Circuit regularly hold that, absent prejudice, an affirmative defense may be raised for the first time on summary judgment. *See, e.g.*, S*chwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 698 (S.D.N.Y. 2005) (collecting cases). Defendant is not prejudiced because it was aware of the TTAB determinations (JSUF ¶¶ 55–61) and should have expected Plaintiffs to raise this argument. Plaintiffs have not waived this argument.

Defendant next asserts that there is no claim preclusion here because the issues in the TTAB opposition proceedings are not identical to the issues in this litigation, and that Defendant was not incentivized to zealously litigate the issue in the opposition proceedings. (Def. Opp'n at 7–8). Defendant relies on *Light Sources, Inc. v. Cosmedico Light, Inc.*, 360 F. Supp. 2d 439 (D. Conn. 2005) for the proposition that a TTAB determination is not preclusive because it concerns only whether "one has the right to register a mark," and not "whether one has the right to exclusive use of the mark in practice." *Id.* at 440. However, since the decision in *Light Sources*, the Supreme Court has considered this same issue and determined that "[i]f a mark owner uses its mark in ways that are materially the same as the usages included in its registration

9

application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation." *B & B Hardware*, 575 U.S. at 156.  Both the action here and the TTAB proceeding concerned Defendant's use of the mark in relation to clothing and apparel. (*Compare* Diesel S.p.A.'s Notice of Opposition ¶ 7 *with* JSUF ¶ 35; Complaint, ¶ 23; Pl. Reply at 6).  As such, the issues in both proceedings are "materially the same."  *See B & B Hardware*, 575 U.S. at 156.

Defendant last argues that it did not have a "full and fair opportunity" to litigate this issue because of the low stakes nature of the TTAB opposition proceeding.  (Def. Opp'n at 9). Defendant asserts that the stakes in the TTAB proceeding were low because, at the time, Defendant "had already been using 'diesel power gear' for more than five years, had accrued strong common-law rights, and non-registration—the worst case possible outcome from the TTAB opposition—would not have compromised such uses or common-law rights."  (Def. Opp'n at 9).  Defendant asserts that a loss here would force a potentially fatal rebrand and significant financial liability.  (Def. Opp'n at 9).  However, the Supreme Court has already rejected a similar argument and concluded that "[w]hen registration is opposed, there is good reason to think that both sides will take the matter seriously."  *B & B Hardware*, 575 U.S. at 159. At bottom, the Supreme Court summarized succinctly:

> The importance of registration is undoubtedly why Congress provided for *de novo* review of TTAB decisions in district court.  It is incredible to think that a district court's adjudication of particular usages would not have preclusive effect in another district court. Why would unchallenged TTAB decisions be different?  Congress' creation of this elaborate registration scheme, with so many important rights attached and backed up by plenary review, confirms that registration decisions can be weighty enough to ground issue preclusion.

*Id.* at 160.

Defendant is precluded from re-litigating the issues of whether Defendant's alleged infringing mark, DIESEL POWER GEAR, is likely to cause confusion and dilute the DIESEL Marks before this Court.  Plaintiffs are entitled to summary judgment on the issues of trademark infringement and trademark dilution with respect to Defendant's DIESEL POWER GEAR mark.

## II.    Even Without The Benefit Of Claim Preclusion, Plaintiffs Are Entitled To Summary Judgment On Their Trademark Infringement and Federal Unfair Competition Claims

Even if Defendant were not precluded from re-litigating the issues of whether Defendant's mark, DIESEL POWER GEAR, is likely to cause confusion and dilute the DIESEL marks, the Court finds that, on the undisputed record, Plaintiffs are entitled to summary judgment on their trademark infringement and federal unfair competition claims.  Plaintiffs are also entitled to summary judgment on their trademark infringement and federal unfair competition claims with respect to Defendant's use of the DIESELSELLERZ mark.  (Compl. Wherefore, F.iv).

Section 32(a)(1) of the Lanham Act prohibits the

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(a)(1).  There is a two-pronged test for infringement under section 32(a): (1) whether the mark is "entitled to protection" and (2) whether there is a likelihood of consumer confusion as to origin or sponsorship of defendant's goods.  *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).[3]

---

[3] This same test is applied to federal unfair competition claims under section 43(a) of the Lanham Act, *see Pearson Educ., Inc. v. Boundless Learning, Inc.*, 919 F. Supp. 2d 434, 437 (S.D.N.Y. 2013), and common law unfair competition claims under New York law, *see Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016).  However, to prevail on a claim for common law unfair competition under New

### A. *Plaintiffs' Trademark Is Entitled To Protection*

Plaintiffs have produced evidence of federal trademark registrations covering the DIESEL Marks, many of which are incontestable.  (JSUF ¶ 23).  Plaintiffs' incontestable registrations serve as conclusive evidence of the validity of, and Plaintiffs' exclusive right to use, such DIESEL Marks.  *See* 15 U.S.C. § 1115(a)-(b).  Those registrations that are not incontestable serve as prima facie evidence of the same.  *See* 15 U.S.C. § 1115(a).  Moreover, Defendant does not contest that Plaintiffs' trademark is entitled to protection.  (*See generally* Def. Opp'n).  Plaintiffs have established that their trademark is entitled to protection.

### B. *The Balance Of The Polaroid Factors Demonstrates A Likelihood Of Confusion Between The Two Marks*

Plaintiffs' trademark infringement claim here is premised on post-sale confusion.  (Pl. Mot. at 1, 7).  The Second Circuit has recognized a claim for post-sale confusion for more than fifty years.  *See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc.*, 221 F.2d 464, 466 (2d Cir. 1955); *see also Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 n.2 (2d Cir. 2005) ("The Lanham Act protects against several types of consumer confusion, including . . . *post-sale* confusion." (emphasis in original); *Gucci Am., Inc. v. Guess?, Inc.* ("*Gucci II*"), 843 F. Supp. 2d 412, 418 (S.D.N.Y. 2012) (recognizing a claim for post-sale confusion).  Under a post-sale confusion theory, the owner of a trademark is harmed when potential purchasers who, knowing that the public is likely to be confused or deceived by the allegedly infringing product, choose "to purchase that product instead of a genuine one in order to gain the same prestige at a lower price."  *Gucci II*, 843 F. Supp. 2d at 418 (citing *Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 108

---

York law, a plaintiff must also show bad faith or intent.  *Id.* at 157 (quoting *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 370 (S.D.N.Y. 2014)).

(2d Cir. 2000)).  The Second Circuit has held that post-sale confusion is actionable when members of the public are confused as to the origin of the products, as the existence of such confusion is precisely what would lead a potential purchaser to choose the cheaper infringing product over the more expensive genuine article.  *Hermes Intern.*, 219 F.3d at 108.

To determine likelihood of confusion in a post-sale context, courts in this Circuit apply the factors articulated in *Polaroid v. Polarad Electronics*, 287 F.2d 492 (2d Cir. 1961):

> (i) the strength of the senior user's marks; (ii) the similarity of the parties' marks; (iii) the market proximity of their products; (iv) the likelihood that the senior user will bridge any gap separating the parties' current markets; (v) the existence of actual consumer confusion; (vi) whether the junior user acted in bad faith in adopting its mark; (vii) the quality of the junior user's products; and (viii) the sophistication of the relevant consumer group.

*Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 327 (2d Cir. 2020); *Gucci II*, 843 F. Supp. 2d at 418 ("[C]ourts in the Second Circuit look at all of the traditional *Polaroid* factors in analyzing claims of post-sale confusion.").  The *Polaroid* test requires examining the products in their totality in order to evaluate whether consumers are likely to be confused.  *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016).  The test is not mechanical, *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013), and no single factor is dispositive.  *Int'l Info. Sys.*, 823 F.3d at 160.  "[I]t is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why."  *Int'l Info. Sys.*, 823 F.3d at 160 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995)).  Weighing all of the *Polaroid* factors and their applicability to the undisputed facts in the record, the Court concludes that there is a likelihood of confusion between the marks of the Plaintiffs and Defendant.

### 1.  Plaintiffs' Mark Is Strong

Defendant concedes that Plaintiffs' DIESEL Marks are strong (Def. Opp'n at 13), and thus, that the first *Polaroid* factor weighs in favor of a finding of a likelihood of confusion.

### 2.  The Similarity Between The Marks Is Likely To Cause Confusion

The "similarity of the marks" test attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers. *Arrow Fastener*, 59 F.3d at 394.  To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and "the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993).  The Court must analyze the similarity of the products "in light of the way in which the marks are actually displayed in their purchasing context." *Burlington Coat Factory*, 426 F.3d at 538.  Two products may be easily differentiated when carefully viewed together, but those same products may still be confusingly similar when encountered individually under typical purchasing conditions. *Id.* at 539.  The key question is whether the two products create the same general overall impression such that a consumer who has seen Plaintiff's mark would, upon later seeing Defendant's mark alone, be confused. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004 (2d Cir. 1997).

Defendant's DIESEL POWER GEAR and DIESELSELLERZ marks are confusingly similar to Plaintiffs' marks.  Plaintiffs owns several DIESEL trademarks, most of which include the word "diesel" in all capital letters.  (JSUF ¶ 23).  Plaintiffs also own trademarks of the word "diesel," again in all capital letters, but in white lettering with a red square background.  (JSUF ¶ 23).  Further, as Defendant concedes, Plaintiffs' marks are strong.  (*See* Def. Opp'n at 13).  The Second Circuit has held that strong marks demand broader protection against infringers. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987); *Lois Sportswear,*

*U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir. 1986) (holding that the strength of the mark is crucial to the likelihood of confusion test because the senior user's intimate association with the trademark increases the likelihood that consumers will wrongly assume, in the post-sale context, that the junior user's product was actually manufactured by the senior user). Indeed, the Federal Circuit has held that "Famous or strong marks enjoy a wide latitude of legal protection." *Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 352 (Fed. Cir. 1992). It therefore follows that, where a mark is strong, there is less tolerance for similarities from competing marks. *Id.* at 353.

As for the DIESELSELLERZ mark, the Court concludes that it is confusingly similar to Plaintiffs' mark. Plaintiffs' have provided only one instance of the DIESELSELLERZ mark as used by Defendant outside of Defendant's website. (Brownlee Decl. Ex. A, Part 2, at 34). The DIESELSELLERZ mark is displayed at the entrance of Defendant's brick and mortar store. The word "diesel" is displayed in all black capital letters while the word "Sellerz" is in lower-case. Clearly, this choice draws the focal point of the consumers eyes to the word "diesel" in the mark. *See Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (weighing more heavily the dominant part of a mark in the Court's analysis); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) ("[T]he general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more weight, and the other aspects less weight."); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221 (5th Cir. 2009) ("[C]ourts should give more attention to the dominant features [of a mark]."); *In re Electrolyte Laboratories, Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark."). Moreover, the "z" in "sellerz" is offset from the rest of the mark by way of being in a white font in a red box. This

use clearly draws to mind Plaintiffs' similar mark. Although that part of the design does not include the word "diesel," that use could clearly confuse an ordinary purchaser. *See Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183, 1187 (E.D.N.Y. 1972) (finding that although a defendant's poster did not use the words "Coca-Cola," the stylized script and accompanying words, colors and design on the poster mirrored the distinctive "Coca-Cola" trademark); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:52 (5th ed., updated Dec. 2021) ("When a mark has a distinctive and widely recognizable lettering style, infringement may occur even when the junior user uses different words but the same distinctive style.").

Defendant also uses the DIESELSELLERZ mark as the url for one of its websites, www.dieselsellerz.com. (JSUF ¶ 40). The Second Circuit has held that, where a junior user has allegedly infringed the senior user's mark on the internet, "the subtle differences in font and other characteristics [between the marks] . . . are of even less significance, given that the overarching concern of the individual searching the Internet is to arrive at the correct website, which is ultimately identified by a purely text-based website address." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004).

As for the DIESEL POWER GEAR mark, the Court concludes that it is also confusingly similar to Plaintiffs' mark. The use of the word "diesel" in the Defendant's mark is presented in all capital letters and either in black font or white font on a dark background. (*Compare* Iesurum Decl., ¶ 4, Ex. A *with* Brownlee Decl., ¶ 5, Ex. A). In one instance, Defendant uses the word "diesel" in white lettering on a red square background, nearly identical to one of Plaintiffs' registered marks (the "Diesel AF Shirt"). (*Compare* JSUF ¶ 23 *with* Pl. 56.1 Stmt. ¶ 72).[4] Defendant also uses the DIESEL POWER GEAR mark as the url for one of its websites, (JSUF ¶

---

[4] Defendant does not dispute that it offers this product for sale. (Def. 56.1 Response ¶ 72).

31), where, again, "the subtle differences in font and other characteristics . . . are of even less significance, given that the overarching concern of the individual searching the Internet is to arrive at the correct website, which is ultimately identified by a purely text-based website address." *Savin Corp.*, 391 F.3d at 458.

As the undisputed record reflects, there are some differences between the Plaintiffs' and Defendant's marks. For example, Defendant's mark is usually accompanied by the words "power" or the initials "DP." (*See* Brownlee Decl., ¶ 5, Ex. A) (showing images of Defendant's products). The Diesel AF Shirt also includes the letters "AF" next to the word "diesel." (Pl. 56.1 Stmt. ¶ 72). However, those differences do not make the two marks sufficiently dissimilar to avoid a likelihood of confusion. The law is clear that if a junior user takes the entire mark of another and adds a generic, descriptive or highly suggestive term, it is generally not sufficient to avoid confusion. *See Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 1322 (Fed. Cir. 2014) ("[A]ddition of a suggestive or descriptive element [to another's mark] is generally not sufficient to avoid confusion." (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:50 (4th ed.))); *Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 18 (1st Cir. 2012) (Junior user's addition of the descriptive term "coop" to senior user's ORIENTAL mark was unlikely to avoid confusion); *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350 (9th Cir. 1980) (the defendant's attempt to distinguish its use of the terms "Golden Door Coiffeur" and "Golden Door for Hair" from the plaintiff's GOLDEN DOOR mark is unpersuasive); *see also Double Coin Holdings, Ltd. v. Tru Development*, 2019 WL 4877349, *9 (T.T.A.B. 2019) ("[I]f a junior user takes the entire mark of another and adds a generic, descriptive or highly suggestive term, it is generally not sufficient to avoid confusion.").

Moreover, the word "diesel" is used more prominently than the words "power" or "gear" in Defendant's use of the DIESEL POWER GEAR mark.  The word "diesel" usually appears first in the design and frequently appears larger than the rest of the design pattern.  (*See* Iesurum Decl., ¶ 4, Ex. A).  While the basic rule is that marks must be compared in their entireties and not dissected, "in articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties."  *In re National Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985); *FocusVision Worldwide, Inc. v. Info. Builders, Inc.*, 859 F. App'x 573, 575 (Fed. Cir. 2021) (finding that TTAB did not err in finding a likelihood of confusion where the junior user's mark "incorporates [the senior user's] mark in its entirety as the first half of its own mark").  This principle is more apt where the less dominant aspect of a party's use of a mark consists of a generic term such as "power."  *See Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015) ("The Board did not err in giving less emphasis to the word JUICE when it noted that the term is generic.").

The Court does acknowledge that Defendant's use of the word "diesel" also occasionally appears with lower case letters, or in different colors from Plaintiffs' DIESEL mark.  However, the Court does not limit its consideration to a side-by-side analysis, but instead looks to whether the two marks leave consumers with the same overall impression.  *See Burlington Coat Factory*, 426 F.3d at 539.  The two marks at issue here do just that.

The Court concludes that given the strength of Plaintiffs mark, the overall impression created by the marks, and the context in which they are found, Defendant's marks create a likelihood of confusion with Plaintiffs' marks.  As such, this factor favors Plaintiffs.

### 3. The Parties' Products Are In Close Proximity

The third *Polaroid* factor focuses on whether the two products compete with each other, with special attention devoted to assessing whether goods "serve the same purpose, fall within the same general class, or are used together." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991). The Court focuses on a user's central purpose rather than a sporadic and marginal aspect of the user's purposes. *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (quoting *Girl Scouts of Am. v. Bantam Doubleday Dell Publ'g Grp.*, 808 F. Supp. 1112, 1126–27 (S.D.N.Y. 1992)).

The competitive proximity factor has two elements, market proximity and geographic proximity. "Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 670 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017) (assessing "whether the products serve the same purpose and whether they share similar geographic distribution, market position and audience appeal"). At bottom, this factor seeks "to determine whether the two products have an overlapping client base that creates a potential for confusion." *Brennan's*, 360 F.3d at 134.

In the context of post-sale confusion, Courts in this Circuit regularly hold that differences in geographic distribution, market position, audience appeal, and price point have "little or no bearing" on a likelihood of confusion. *See e.g.*, *Coty Inc. v. Excell Brands*, LLC, 277 F. Supp. 3d 425, 448 (S.D.N.Y. 2017); *Gucci Am., Inc. v. Guess?, Inc.* ("*Gucci III*"), 868 F. Supp. 2d 207, 248 (S.D.N.Y. 2012) ("[I]n the post-sale context, the target *selling* market is of decreased importance, as the confusion that exists in the general viewing public is what matters" (emphasis

in original)); *see also Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005) ("That [defendant's product] costs half as much as [plaintiff's product] and is displayed on different shelves in the same store does not imply that the products are not in competition.").  This is because in the post-sale context, "the target selling market is of decreased importance," and instead it is the confusion that exists among the general viewing public that matters.  *Gucci III*, 868 F. Supp. 2d at 248.  The fact that two products ultimately may be sold in different venues or at different prices has no effect on the possibility of post-sale confusion.  Indeed, as other Courts in this Circuit have observed, the lower relative price point of an infringer's products may *encourage* confusion because a potential purchaser, aware of a likelihood of confusion between two products, may "choose to purchase [the cheaper infringing] product instead of a genuine one in order to gain the same prestige at a lower price."  *Coty*, 277 F. Supp. 3d at 448 (quoting *Gucci II*, 843 F.Supp.2d at 418); *LVL XIII Brands*, 209 F. Supp. 3d at 670 (finding that it is less relevant in the post-sale confusion context that two products are sold in different locations.).

Here, the likelihood of post-sale confusion is strong because the products are in close market proximity to one another.  It is undisputed that both Plaintiffs and Defendant predominantly sell apparel and accessory products, including t-shirts and jeans.  (JSUF ¶¶ 1, 3, 29, 44).  Accordingly, Plaintiffs' and Defendant's products "serve the same purpose [and] fall within the same general class, or are used together."  *Lang*, 949 F.2d at 582; *see also Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988) (finding competitive proximity where the products at issue were both military action figures); *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 336 (S.D.N.Y. 2013) (proximity factor weighed in plaintiff's favor where both parties sold goods in the natural and curly hair care product market); *LVL XIII Brands*, 209 F. Supp. 3d at 670 (proximity factor weighed in plaintiff's favor where both parties sold luxury men's sneakers).

In opposing Plaintiffs' motion, Defendant focuses on the lack of price proximity between its products and those of the Plaintiffs. (Def. Opp'n at 14 n.1; Def. Mot. at 7–9). However, as a preliminary matter, it is undisputed that the price range of both parties' products overlap. (*Compare* JSUF ¶ 12 *with* JSUF ¶ 33). Nonetheless, even if Defendant's products did cost less than those of Plaintiff, that fact weighs against Defendant. Numerous cases in this Circuit have noted that "if anything, [Defendant's] lower prices may increase the likelihood of consumers purchasing 'the allegedly infringing product, on the grounds that they can obtain the same prestige for less money.'" *Coty*, 277 F. Supp. 3d at 449 (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 831 F.Supp.2d 723, 747 (S.D.N.Y. 2011)).

The Court concludes that considerations of proximity weigh in favor of Plaintiff.

### 4.   It Is Likely That Plaintiff Will Bridge The Gap

The fourth *Polaroid* factor is "the likelihood that the prior owner will bridge the gap." *Polaroid*, 287 F.2d at 495. "'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus.*, 412 F.3d at 387 (citing *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 963 (2d Cir. 1996)).

Both parties here sell apparel and accessories throughout the United States. (JSUF ¶¶ 1, 3, 9, 29, 39, 44). Accordingly, there is no gap to bridge. *See Versace v. Versace*, No. 01CIV.9645(PKL)(THK), 2003 WL 22023946, at *10 (S.D.N.Y. Aug. 27, 2003) (finding that since the plaintiff and defendants both sold apparel throughout the United States, they were in close proximity and there was no gap to bridge). Though Defendant maintains that it targets "diesel truck enthusiasts", its representatives have likewise conceded that such persons "come in a lot of different shapes and sizes," and that Defendant creates both "clean" and "grungy" products to appeal to different audiences. (JSUF ¶¶ 45–49). Moreover, Plaintiffs have partnered

with companies related to the automotive industry and have created collections arising from such partnerships.  (JSUF ¶¶ 4–8).  Defendant, without citing to the record or any legal authority glibly asserts that Plaintiffs have not bridged the gap because "[b]randed silk scarves for Ferrari owners is not an entry into the blue-collar diesel truck market."  (Def. Opp'n at 14–15).  The Court does not find this argument persuasive.  The "Bridging the Gap" factor favors Plaintiff.

### 5. Actual Confusion Is Not Critical In A Post-Sale Confusion Case

Plaintiffs do not contend that they have any evidence of actual confusion.  (Pl. Mot. at 12).  Nonetheless, the Second Circuit has made clear that actual confusion need not be shown under the Lanham Act, since "actual confusion is very difficult to prove and the [Lanham] Act requires only a likelihood of confusion as to source."  *Lois Sportswear*, 799 F.2d at 875.  "Evidence of actual confusion in the post-sale context is particularly difficult to come by", and "[t]he absence of evidence of actual confusion has never been held to foreclose the availability of a post-sale confusion claim."  *Gucci III*, 868 F. Supp. 2d at 240.  Defendants concede that this is "an accurate characterization of the law," but note that Plaintiffs do not present any evidence of actual confusion.  (Def. Opp'n at 15).  Considerations of actual confusion are neutral in this case.

### 6. Plaintiffs Fail To Establish Bad Faith As A Matter Of Law

Bad faith concerns whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any likely confusion between the two companies' products.  *See Star Indus.*, 412 F.3d at 388.  The Second Circuit has stated that bad faith may be inferred from a junior user's "actual or constructive knowledge" of a senior user's mark, *Star Indus.*, 412 F.3d at 389, but such knowledge may also be consistent with good faith, *Lang*, 949 F.2d at 583–84; *Arrow Fastener*, 59 F.3d at 397 ("Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith.").

In assessing this factor, the key question is whether there is evidence that the junior user has used or is using the senior user's mark with an *intent* to promote confusion or exploit the good will of the senior user's mark. *Star Indus.*, 412 F.3d at 388 ("[I]n some cases even where a trademark search resulted in knowledge of the earlier mark, in the absence of additional evidence indicating an intent to promote confusion or exploit good will or reputation, this Court has found the junior user to be in good faith." (citing *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir.1993)). Nonetheless, where prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, the Second Circuit has upheld a finding of bad faith. *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 587 (2d Cir. 1993); *Mobil Oil Corp.*, 818 F.2d at 258–259; *see also Heritage of Pride, Inc. v. Matinee NYC, Inc.*, No. 14 CIV. 4165 (CM), 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014); *MetLife, Inc. v. Metro. Nat. Bank*, 388 F. Supp. 2d 223, 234 (S.D.N.Y. 2005) (concluding that where a defendant's mark is "strikingly similar" to a plaintiff's mark, "a conclusion of bad faith is appropriate"). In fact, where a defendant has prior knowledge of the senior user's mark, "the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *Mobil Oil Corp.*, 818 F.2d at 259 (quoting *Harold F. Ritchie Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 758 (2d Cir. 1960)).

As the Court has discussed, *see* Part II.B.2 *supra*, the parties' marks are strikingly similar. Moreover, it is undisputed that, in or about 2013, when Defendant's business was established and began using the alleged infringing marks, at least one of Defendant's employees—Defendant's graphic designer, who started with the company in 2013 and is primarily responsible for creating Defendant's designs for its Diesel Power Gear Products—had actual knowledge of Plaintiffs and the DIESEL marks. (JSUF ¶¶ 28, 53). Plaintiffs' DIESEL Registrations have also been on the Principal Register since as early as 1988. (JSUF ¶ 23).

Additionally, in August 2016, Plaintiffs filed the Initial Opposition against one of Defendant's trademark applications, (JSUF ¶ 56; *see also* Brownlee Dec., ¶ 7, Ex. C), thereby providing clear notice to Defendants of Plaintiffs' claims as a senior user.  Last, it is undisputed that in July 2017, Plaintiff sent a cease-and-desist letter to Defendant, which also put Defendant on notice of Plaintiff's mark and the "alleged infringing and illegal nature of Defendant's actions."  (JSUF ¶ 63).  It is not disputed that Defendant opted to ignore this notice.  (JSUF ¶ 64).

In response, Defendant cites to the declaration of its Chief Operating Officer that Defendant "never used 'diesel,' *e.g.*, in 'diesel power gear,' with any intent to benefit from any goodwill or other value that Plaintiffs may have in their DIESEL related trademarks," (Perkins Decl. ¶ 18), "was not aware of Plaintiffs and their claimed rights in DIESEL until years after Diesel Power Gear had begun using 'diesel power gear,'" (Perkins Decl. ¶ 19), and that "[w]hen Diesel Power Gear received notification(s) from Plaintiffs of alleged trademark infringement, Diesel Power Gear undertook [] a good faith legal analysis, and determined thereby that its use of 'diesel' was not infringing," (Perkins Decl. ¶ 24).  Though this evidence may be weak, it is enough to establish a factual dispute as to bad faith.  For that reason, factual disputes in regard to bad faith preclude the Court from considering this factor in Plaintiff's favor.

### 7.  The Quality Of Defendant's Product Favors Neither Party

This factor "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  *Star Indus.*, 412 F.3d at 389 (citation and internal quotation marks omitted).  Plaintiffs put forth no evidence regarding this factor.  (Pl. Mot. at 14).  Therefore, the record is insufficient to support any finding that either product is markedly superior in quality to the other.  Nonetheless, in the post-sale confusion context, this factor is less important because there is less of a concern that casual observers of the product will "examine a product's construction and materials."  *Gucci II*, 843 F.

Supp. 2d at 424.  In light of the record before the Court, this factor is neutral in this case.  *See*

*LVL XIII Brands*, 209 F. Supp. 3d at 676 ("Because there is insufficient evidence in the record

indicating the superiority or inferiority of the products at issue, or that they were of confusingly

comparable quality, this factor is neutral." (internal quotation marks and citations omitted)).

### 8.  Plaintiffs Fail To Establish Any Evidence Of The Sophistication Of Their Customers

The final *Polaroid* factor, consumer sophistication, "consider[s] the general impression of

the ordinary purchaser, buying under the normally prevalent conditions of the market and giving

the attention such purchasers usually give in buying that class of goods."  *Star Indus.*, 412 F.3d

at 390 (internal quotation marks and citation omitted).  In general, "[t]he more sophisticated the

consumer, the less likely they are to be misled by similarity in marks."  *TCPIP Holding v. Haar*

*Communications, Inc.*, 244 F.3d 88, 102 (2d Cir. 2001).  Sophistication may be proved "by direct

evidence such as expert opinions or surveys, and [i]n some cases by indirect evidence such as by

inferring characteristics of consumers based on the nature of the product or its price."  *Real News*

*Project, Inc. v. Indep. World Television, Inc.*, No. 06 CIV. 4322(GEL), 2008 WL 2229830, at

*21 (S.D.N.Y. May 27, 2008) (quoting *Star Indus.*, 412 F.3d at 390) (internal quotation marks

omitted)).

Plaintiffs cite to no factual evidence regarding this factor.  Instead they assert that in the

post-sale confusion context, this factor is not a significant consideration.  (*See* Pl. Mot. at 14–15).

However, although "the sophistication of direct purchasers does not necessarily bear on those

who might be confused in the post-sale context," *Malletier v. Dooney & Bourke, Inc.*, 561 F.

Supp. 2d 368, 389 (S.D.N.Y. 2008), courts in this Circuit still consider the "sophistication of

members of the public likely to take note of [the relevant] products," in the post-sale confusion

context, *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13CV3669 DLC, 2014 WL 6850966, at

*15 (S.D.N.Y. Dec. 4, 2014); *see also Dooney & Bourke*, 561 F. Supp. 2d at 389 (finding that this factor ultimately favored defendants because "consumers of quality, expensive handbags . . . tend to be sophisticated, hyper fashion-conscious, and are not likely to be easily confused."). Since Plaintiffs bear the burden of proof, and have offered no record evidence on this factor, weighing of this factor tips in favor of Defendant. *Gucci III*, 868 F. Supp. 2d at 247.

* * *

Balancing the *Polaroid* factors, the Court finds that there is a likelihood of confusion between Plaintiffs' and Defendant's mark. Plaintiffs' mark is strong and the parties' marks are substantially similar. The parties' products also compete with each other in the clothing and apparel market and there is no gap to bridge regarding the Plaintiffs' entry into Defendant's market. There is a genuine dispute of fact regarding whether Defendant's acted in bad faith, but this factual dispute is immaterial because even if Defendants were acting in good faith, the Court still concludes that there is a strong likelihood of confusion between the parties' marks. As such, there are no genuine disputes of material fact and Plaintiffs are entitled to summary judgment as a matter of law on Plaintiffs' trademark infringement claim.

> ### C. *Defendant's Fail To Establish That Its Use Of The DIESEL Mark Is Protected Fair Use*

On the undisputed record, Defendant cannot withstand summary judgment on the grounds that its use of the word "diesel" is a fair use because, as Defendant concedes, DIESEL POWER GEAR is "often used as a trademark in a source identifying manner." (Def. Mot. at 5). An owner's rights in a mark extend only to that mark's significance as an identifying source, not to the original descriptive meanings of a mark. *See Kelly-Brown*, 717 F.3d at 308. Accordingly, the Lanham Act provides that if a party uses words constituting a registered mark "in a purely descriptive sense, this use may qualify as permissible fair use." *Tiffany & Co. v. Costco*

*Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020) (quoting *Kelly-Brown*, 717 F.3d at 308).  Fair use is an absolute defense to a claim for Trademark Infringement, even if a defendant's conduct would otherwise constitute infringement.  *See id.*  In establishing a fair use defense, a defendant must prove that it used an allegedly infringing term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Id.* (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009)).  On the undisputed facts, Defendant cannot establish the first two elements of a fair use defense.

## 1.  Defendant Uses The Word "Diesel" As A Mark

With respect to the first element of a fair use defense, the Second Circuit has equated "use . . . as a mark" with "the use of [a] term as a symbol to attract public attention*." JA Apparel*, 568 F.3d at 400 (quoting *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 499 (2d Cir. 1962)).  In analyzing whether a defendant uses a term as a mark, the Court should consider the

> physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks, as well as the presence or absence of precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense.

Id. at 401 (internal quotation marks and citations omitted).

As Defendant itself concedes, DIESEL POWER GEAR is "often used as a trademark in a source identifying manner." (Def. Mot. at 5).  Moreover, on the undisputed facts, it is clear that Defendant uses the word "diesel" as a mark.  The term "diesel" is directly incorporated into Defendant's mark and often appears prominently and in a stylized format on Defendant's clothing and apparel products.  (*See* Brownlee Decl. Ex. A).  Defendant, as it concedes, clearly uses the term "diesel" on its products "as a symbol to attract public attention." *JA Apparel*, 568

F.3d at 400.  Since Defendant uses the term "diesel" as a mark, it cannot succeed on a fair use

defense to avoid liability for trademark infringement.

### 2. Defendant Uses The Word "Diesel" In A Source Identifying Manner

With respect to the second element of a fair use defense, an owner's rights in a mark

"extend only to its significance as an identifying source, not to the original descriptive meanings

of a mark."  *See Kelly-Brown*, 717 F.3d at 308.  Descriptive use is evident in such situations

where a mark incorporates a term that is the only reasonably available means of describing a

characteristic of another's goods.  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos

Inc.*, 228 F.3d 56, 65 (2d Cir. 2000).

On the undisputed record, and as Defendant concedes, Defendant uses the term "diesel"

on its clothing and apparel products in a source identifying manner.  (Def. Mot. at 5).  Defendant

urges that this nonetheless does not preclude its fair use defense because "the appearance of

'diesel' as an element of diesel power gear does not carry independent source-identification

weight, but instead describes the diesel-centric services and products that Diesel Power Gear

provides."  (Def. Mot. at 5).  However, "'[t]o determine whether a term is being used as a mark,

we look for indications that the term is being used to associate it with a manufacturer.'"

*Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 936 (9th Cir. 2017) (citation omitted).

Defendant's use of "diesel" on its clothing and apparel products is not used to describe the

products themselves but is instead meant to identify the source of the product, *i.e.*, the

Defendant.  Significantly, it is undisputed that when Defendant filed for trademark applications

for marks employing the term "diesel," including DIESEL POWER GEAR and

DIESELSELLERZ, Defendant did not seek to disclaim "diesel" from the registration.  (JSUF

¶¶ 55, 59–60).  This fact only further supports the conclusion that Defendant's use of the term

"diesel" in its mark is not descriptive, but instead source-identifying.  *See* Trademark Manual of Examining Procedure § 1213 (setting forth the USPTO practice of requiring a disclaimer of unregistrable components of marks, including "the name of the goods or services, other matter that does not indicate source, *matter that is merely descriptive*. . .", and noting that an applicant may voluntarily disclaim such a component of a mark (emphasis added)); *see also Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 CIV. 4487 (DLC), 2005 WL 2044944, at *1 (S.D.N.Y. Aug. 24, 2005) (noting that the USPTO required an applicant, which sold videos intended to introduce toddlers to sports and sought to register BABY SOCCER, to disclaim the descriptive wording "SOCCER" from its mark, in order to obtain preliminary approval of its trademark application).

Defendant's citation to *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976), is not persuasive.  (*See* Def. Mot. at 5–6.)  In *Abercrombie*, the New York retail store Abercrombie & Fitch owned trademark registrations for the mark SAFARI for goods including "[m]en's and [w]omen's outer garments, including hats . . . and shoes."  *Id.* at 7.  Subsequent to Abercrombie's registrations, New York retail store Hunter's World began selling three styles of boots imported from Africa intended for use on safaris, named "Camel Safari," "Hippo Safari," and "Safari Chukka."  *Id.* at 12.  The Court determined that the use of "Safari" on those products was "a purely descriptive use to apprise the public of the type of product" by referring to its origin in Africa and its use for safaris.  *Id.* at 12.  Defendant does not use the word "diesel" on its clothing and apparel products in a descriptive sense to describe where Defendant's products may have been imported from or for what purpose the product should be used.  Instead, as Defendant concedes, Defendant uses the term "diesel" on its clothing and apparel products in a source identifying manner.  (Def. Mot. at 5).

There are no genuine disputes of material fact with respect to Defendant's fair use defense.  For the reasons discussed, the Court concludes that Plaintiffs are entitled to summary judgment on their trademark infringement claim.

### III.   Plaintiffs Are Entitled To Summary Judgment On Their Trademark Dilution Claim

Plaintiffs are also entitled to summary judgment on their trademark dilution claim. Dilution is the loss of a trademark's ability to clearly identify one source.  *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir.1996) (internal citations and quotation marks omitted).  To establish a claim for dilution, a plaintiff must show that:

> (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.

*Savin Corp.*, 391 F.3d at 448–49.  Defendant does not contest that it uses the alleged infringing marks in commerce (factor two) and, although it contests whether Plaintiff's mark is famous, it does not independently contest that, should the Court find Plaintiff's mark to be famous, it began using the alleged infringing marks after that fame was achieved (factor three).  (Def. Opp'n at 20–23).  Accordingly, the Court focuses its analysis on the fame of Plaintiffs' mark (factor one) and whether Defendant's use of the mark dilutes the quality of Plaintiffs' mark (factor four).

### A.  *Plaintiffs Marks Are Sufficiently Famous*

The Lanham Act delineates when a mark is considered "famous" for purposes of a trademark dilution claim.  Under the Lanham Act, a mark is famous if it is widely recognized by the general consuming public as a designation of source of the goods or services of the mark's owner.  The statute lays out a non-exhaustive list of relevant considerations:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2).

To succeed on a claim for dilution, a plaintiff must show that its mark has a "'significant degree of inherent distinctiveness'" and that it is "truly famous," possessing "a high degree of . . . acquired distinctiveness.'" *Savin Corp.*, 391 F.3d at 449 (quoting *TCPIP Holding*, 244 F.3d at 97–98). The degree of fame required for protection must exist in the general marketplace, not in a niche market. *Id.* at 450 n.6. Fame limited to a specific channel of trade, segment of industry or service, or geographic region is not sufficient to establish that a mark is famous. *Id.*

The Second Circuit has stated that incontestable marks are entitled to a presumption of inherent distinctiveness. *Id.* at 451. It is undisputed that Plaintis' DIESEL mark is incontestable. (JSUF ¶ 23). For that reason, Plaintiffs' mark has sufficient inherent distinctiveness to warrant protection under a claim for trademark dilution.

As for acquired distinctiveness, Plaintiffs' mark has been registered and in use since 1988, for about 3 decades. (JSUF ¶¶ 23, 26). Plaintiffs have generated an average of over $129 million in sales of apparel featuring one or more of the DIESEL marks per year in the United States over the past ten years. (JSUF ¶ 15). Plaintiffs have spent over $4 million on nationwide advertising and promotions of their apparel featuring one or more of the DIESEL marks per year in the United States over the past ten years. (JSUF ¶ 18). The DIESEL Marks and DIESEL

Products, including apparel, have been featured in prominent publications with wide distribution throughout the United States, such as *Details*, *GQ*, *In Style*, *Interview*, *Nylon*, *The New York Times*, *Cosmopolitan*, *W*, *Elle*, and *Esquire*.  (JSUF ¶ 17).  The undisputed evidence strongly suggests that Plaintiffs' mark is "famous" within the meaning of the Lanham Act.  *See Dooney & Bourke*, 561 F. Supp. 2d at 391 (mark was famous where "the company engaged in widespread advertising, publicity, promotion and sales of products bearing the Monogram Multicolore [m]ark[ ], and enjoyed a deluge of unsolicited media coverage and attention." (internal quotation marks omitted)); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 322 (S.D.N.Y. 2010) (NYC TRIATHLON mark is famous where it had been in use for ten years, was extensively promoted nationally and internationally on major news outlets, including the New York Times, and has raised about $2 million for national charities each year); *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1023 (N.D. Cal. 2018) (Versace mark famous where the evidence shows it had been used since 1978, that Versace "engages in extensive advertising and promotional efforts in furtherance of the Versace brand, is widely recognized by consumers for the Versace name, and enjoys a high volume of domestic sales."); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 280 (N.D.N.Y. 2008) (famousness established where Plaintiffs submitted evidence of their "multi-million dollar international marketing campaign, and the large amount, volume and geographic extent of sales.").

Indeed, In *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171 (S.D.N.Y. Jan. 8, 2016), Judge Wood found, for purposes of a motion for entry of default judgment, that Plaintiffs' DIESEL marks were sufficiently famous to establish liability against unidentified defendants who sold counterfeiting products on a network of websites.  *Id.* at *6.  Although Judge Wood's opinion was with respect to a motion for entry of default judgment, in which the

court considers all well-pleaded allegations as true, the Court nonetheless finds significant Judge

Wood's conclusions as to the fame of the Plaintiffs' mark. *See Id.* at *6.

Defendant does not argue that there is a genuine issue of fact on this issue and in fact

cites to no record evidence in its discussion of this element of Plaintiffs' dilution claim. (*See*

Def. Mot. at 10–12; Def. Opp'n at 20–23). Instead, Defendant merely argues, again without any

citation to the record, that Plaintiffs' have only accomplished "niche fame." For the reasons

stated, the Court concludes that Plaintiffs have established that the DIESEL mark is famous.

Defendant also suggests that Plaintiffs have not established fame, given an alleged lack of

"any non-anecdotal or non-de-minimis evidence of actual recognition." (Def. Mot. at 12).

However, although the extent of the actual recognition of the mark is a factor under the statute,

15 U.S.C. § 1125(c)(2)(iii), Defendants cite to no legal authority to support that this factor is

controlling or that evidence of actual recognition of a mark is required to establish that a mark is

sufficiently famous for purposes of a trademark dilution claim. Moreover, this Court has held

that fame "does not require consumer surveys or other data." *Glob. Brand Holdings, LLC v.

Church & Dwight Co.*, No. 17-CV-6571 (KBF), 2017 WL 6515419, at *5 (S.D.N.Y. Dec. 19,

2017). Other Judges in this district have found fame with respect to other marks where the

record reflected the same facts in support of fame that are present here. In *Dooney & Bourke*,

Judge Scheindlin found that Louis Vuitton's Monogram Multicolore mark was sufficiently

famous to support a trademark dilution claim based only on "widespread advertising, publicity,

promotion and sales of products bearing [the mark]" and significant media coverage and

attention. *Dooney & Bourke*, 561 F. Supp. 2d at 391. In *New York City Triathlon*, in the context

of a preliminary injunction, Judge McMahon found that the plaintiff demonstrated a likelihood of

success in establishing that the NEW YORK CITY TRIATHLON marks were sufficiently

famous to support a trademark dilution claim based on the plaintiff's exclusive use of the mark

for a decade, the extent of media attention the New York City Triathlon received, and the amount raised each year by the New York City Triathlon for national charities. *New York City Triathlon*, 704 F. Supp. 2d at 321. In neither *Dooney & Bourke* nor *New York City Triathlon*, did the Court require consumer surveys or other data to find that a mark was "famous" for purposes of a trademark dilution claim.

### B. Plaintiffs Have Established That Defendant's Mark Dilutes Plaintiffs' Mark By Blurring

Defendant also disputes that it is diluting the quality of Plaintiffs' mark by diminishing the mark's capacity to identify and distinguish Plaintiffs' goods, a concept referred to as "blurring." *See Deere & Co. v. MTD Prod., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994). In assessing whether dilution by blurring is likely to occur under federal law, a court "may consider all relevant factors," including the following six statutorily enumerated factors: (1) the degree of similarity between the challenged mark and the famous mark; (2) the degree of distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark or trade name intended to create an association with the famous mark; and (6) any actual association between the mark or trade name and the famous mark. 15 U.S.C. § 1125(c)(2)(B); *see Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 433–34 (S.D.N.Y.), *aff'd*, 674 F. App'x 16 (2d Cir. 2016). No single factor is outcome determinative. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 108 (2d Cir. 2009). The analysis "must ultimately focus on whether an association, arising from the similarity between the subject marks, impairs the distinctiveness of the famous mark," *i.e.*, the ability of the famous mark to serve as a unique identifier. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 204 (2d Cir. 2013) (internal quotation marks omitted)

It is not enough to show that members of the public are likely to "associate" the defendant's mark with the plaintiff's mark, "[t]he statute explicitly requires proof of the likelihood that th[e] defendant's use 'impairs the distinctiveness of the famous mark.'" *My Other Bag*, 156 F. Supp. 3d at 439 (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:116 (4th ed., updated Dec. 2015)); *see Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003) ("[M]ental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution.").

### 1.  There Is A High Degree Of Similarity Between The Marks

The first of the six statutory factors informing the inquiry as to whether the allegedly diluting mark impairs the distinctiveness of the famous mark is the degree of similarity between the marks. *Starbucks Corp.*, 588 F.3d at 108.  The Second Circuit has instructed that this inquiry focuses on whether an association, arising from the similarity between the subject marks, "impairs the distinctiveness of the famous mark." *Id.* at 109.  There is no requirement that the two marks be substantially similar. *Id.* at 108.  Nonetheless, as discussed *supra*, the marks, as used, are substantially similar. *See* Part II.B.2 *supra*.  This factor favors Plaintiffs.

### 2.  Plaintiffs' Mark Is Distinctive

Defendant does not dispute that Plaintiffs' mark is distinctive.  (*See* Def. Opp'n at 23 (incorporating Defendant's analysis under the trademark infringement analysis for the trademark dilution analysis)).  As such, this factor also favors Plaintiffs.

### 3.  Plaintiffs Have Enforced Their Rights To Their Marks

Plaintiffs can establish exclusive use by showing that they have enforced their rights to their marks. *See Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10 CIV. 1611 PKC,

2012 WL 1022247, at *8 (S.D.N.Y. Mar. 22, 2012); *Gucci III*, 868 F. Supp. 2d at 251.  It is undisputed that "Plaintiffs enforce their rights in and to the DIESEL Marks by, among other things, sending cease and desist letters, and instituting civil court proceedings, as well as oppositions and cancellations before the Board."  (JSUF ¶ 27).  Here too, Defendant does not dispute that this factor favors Plaintiff.  (Def. Opp'n at 23).  Therefore, this factor favors Plaintiffs.

### 4.  Plaintiffs' Mark Is Highly Recognizable

As discussed above, *see* Part III.A *supra*, Plaintiffs have established that it has significantly promoted its mark, (JSUF ¶ 18), has generated over a hundred million in sales per year for the last ten years, (JSUF ¶ 15), and has been featured in prominent publications with wide distribution throughout the United States, (JSUF ¶ 17).  Plaintiffs rely on these undisputed facts in support of their contention that their mark is highly recognizable.

Defendant offers no evidence to rebut these facts or create a genuine dispute of fact.  Rather, Defendant merely argues that "Plaintiffs have not adduced any evidence [of recognition], instead relying on circumstantial evidence of marketing outlays."  (Def. Opp'n at 23).  However, as discussed, *see* Part III.A *supra*, Plaintiff relies on much more than mere circumstantial evidence of marketing outlays.  (*See* JSUF ¶¶ 15, 17–18).  Moreover, courts in this district regularly hold that the degree of recognition of a mark can be measured in media coverage, duration of use of the mark, promotion of the mark, and significant sales.  *See Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 594 (S.D.N.Y. 2009) (considering the duration of the use of the mark and the media coverage of the plaintiff's mark); *Gucci III*, 868 F. Supp. 2d at 251 (considering that Plaintiff has spent millions of dollars promoting the mark and has sold billions worth of product).  It is undisputed that Plaintiffs' mark has been used for three decades, has been featured in prominent publications with wide distribution throughout the United States,

and that Plaintiffs have generated significant revenue from sales of apparel featuring one or more of the DIESEL marks.  (JSUF ¶¶ 15, 17, 23, 26).  This factor favors Plaintiffs as well.

### 5.   Plaintiffs Failed To Establish That Defendant Acted With An Intent To Associate Its Mark With Plaintiffs'

"The intent factor does not ask whether a defendant acted in bad faith; instead, it examines purely a defendant's 'intent to associate' its own mark with the plaintiff's."  *Miss Universe*, 672 F. Supp. 2d at 594; *see Starbucks Corp.*, 588 F.3d at 109 ("The determination of an 'intent to associate,' however, does not require the additional consideration of whether bad faith corresponded with that intent.").  To establish intent, Plaintiffs merely rely on the fact that Defendant has bid on keywords comprised of the DIESEL Marks and Plaintiffs' primary categories of DIESEL Products, such as "diesel clothing", "diesel shirts", "diesel tees", and "diesel apparel."  (Pl. Mot. at 19).  However, the mere fact that Defendant bid on those key word searches, alone does not establish that Defendant had an "intent to associate" its mark with Plaintiffs' mark.  *See Miss Universe*, 672 F. Supp. 2d at 594 ("[The plaintiff] has produced no evidence to show that the defendants *intended to capitalize on the renown* of the [the plaintiff's] mark — or even *associate* with that mark — in fashioning their own." (emphasis added)); *cf. Hyundai Motor Am.*, 2012 WL 1022247, at *9 (finding an intent to create an association where "[s]everal deponents who worked on the [the defendant's] ad testified that [the defendant] and its outside advertising firms specifically intended to create an association with [the plaintiff]").  The Court concludes that, this factor favors Defendant.

### 6.   Plaintiff Has No Evidence Of Actual Association

Plaintiff concedes that it has no evidence of actual association.  (*See* Pl. Mot. at 19). Although the lack of evidence of actual association is not dispositive on Plaintiffs' trademark dilution claim, *see Starbucks Corp.*, 588 F.3d at 108, this Court has held that the absence of any

evidence of actual association does weigh in favor of a defendant. *See Miss Universe*, 672 F.
Supp. 2d at 594 ("[Plaintiff] offers no survey results or poll numbers here, and thus fails to show
any instances of actual association between the two trademarks."); *see also Gucci III*, 868 F.
Supp. 2d at 251 (finding that mere comments on a retail sellers website demonstrating confusion
to be weak evidence to support actual association); *cf. Starbucks Corp.*, 588 F.3d at 109
(Starbucks submitted telephone survey results showing confusion between two marks as
evidence of actual association).  Accordingly, this factor weights in favor of Defendant.

*   *   *

Balancing the relevant considerations, the Court concludes an association between
Plaintiffs' mark and Defendant's mark, arising from the similarity between the subject marks,
impairs the distinctiveness of Plaintiffs' mark.  There is a high degree of similarity between
Defendant's mark and Plaintiffs' marks.  Moreover, as Defendant concedes, Plaintiffs' mark is
distinctive.  Plaintiffs have also established that their mark is recognizable and they have
enforced their rights to their mark.  Notwithstanding that Plaintiffs have not established that
Defendants acted with an intent to associate their mark that of with Plaintiffs or demonstrated
any actual association between the marks, the Court finds that there are no genuine issues of
material fact in the record and that Plaintiffs are entitled to summary judgment on their
trademark dilution claim as a matter of law.

> C. *Plaintiffs Establish That Defendants
>    Acted Willfully As A Matter Of Law*

To recover a defendant's profits in a claim for trademark dilution, the Court must find
that the infringement of Plaintiffs' trademark was willful. *See 4 Pillar Dynasty LLC v. New York*

*& Co., Inc.*, 933 F.3d 202, 209 (2d Cir. 2019); 15 U.S.C. § 1125(c)(5)(B)(ii).[5]  To prove willfulness, "a plaintiff must show '(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness.'"  *4 Pillar Dynasty*, 933 F.3d at 209–10 (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).

The undisputed record is clear that Defendants acted with reckless disregard to Plaintiffs' marks.  It is undisputed that, in or about 2013, when Defendant's business was established and began using the alleged infringing marks, at least one of Defendant's employees—Defendant's graphic designer, who started with the company in 2013 and is primarily responsible for creating Defendant's designs for its Diesel Power Gear Products—had actual knowledge of Plaintiffs and the DIESEL marks.  (JSUF ¶¶ 28, 53).  Plaintiffs' DIESEL Registrations have also been on the Principal Register since as early as 1988 and many are designated as incontestable.  (JSUF ¶ 23). In August 2016, Plaintiffs filed the Initial Opposition against one of Defendant's trademark applications, (JSUF ¶ 56; *see also* Brownlee Dec., ¶ 7, Ex. C), thereby providing clear notice to Defendants of Plaintiffs' claims as a senior user.  It is also undisputed that in July 2017, Plaintiffs sent a cease-and-desist letter to Defendant, which also put Defendant on notice of Plaintiffs' mark and the "alleged infringing and illegal nature of Defendant's actions."  (JSUF ¶ 63).  It is not disputed that Defendant opted to ignore this notice.  (JSUF ¶ 64).  Moreover, the degree of similarity between the marks, *see* Part II.B.2 *supra*, further reinforces that Defendant's have acted recklessly in using its mark.  *4 Pillar Dynasty*, 933 F.3d at 210 ("Defendants' failure to stop selling [] infringing goods after the action was filed" when considered with the similarity of the marks, supported a finding that the defendants acted willfully).

---

[5] Plaintiffs need not plead willfulness to recover Defendant's profits on their trademark infringement or federal unfair competition claims.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020).

Defendant argues that Plaintiffs cannot show willfulness.  Defendant cites to *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500 (S.D.N.Y. 2008), for the proposition that a defendant's refusal to abandon a mark in the face of a cease-and-desist letter by itself cannot support a finding of bad faith.  (Def. Opp'n at 24).  However, a lack of bad faith does not negate a finding of "willfulness," which can be predicated upon reckless disregard or willful blindness.  Moreover, in *O'Keefe*, the defendant's mark was dissimilar from the plaintiff's mark.  *See* 590 F. Supp. 2d at 521–22.  Accordingly, it was reasonable for the defendant in that case to believe that its mark did not infringe the senior user's mark.  As discussed *supra*, that is not the case here.  *See* Part. II.B.2 *supra*.

Defendant also cites to the declaration of its Chief Operating Officer that Defendant "never used 'diesel,' *e.g.*, in 'diesel power gear,' with any intent to benefit from any goodwill or other value that Plaintiffs may have in their DIESEL related trademarks," (Perkins Decl. ¶ 18), "was not aware of Plaintiffs and their claimed rights in DIESEL until years after Diesel Power Gear had begun using 'diesel power gear,'" (Perkins Decl. ¶ 19), and that "[w]hen Diesel Power Gear received notification(s) from Plaintiffs of alleged trademark infringement, Diesel Power Gear undertook [] a good faith legal analysis, and determined thereby that its use of 'diesel' was not infringing," (Perkins Decl. ¶ 24).

These claims, even if true, do not undermine a finding of willfulness.  Even if Defendant's claims are true, Defendant still acted with reckless disregard of the senior user's mark.  Plaintiffs' DIESEL Registrations have been on the Principal Register since as early as 1988, (JSUF ¶ 23), well before Defendant began using its DIESEL POWER GEAR mark.  In August 2016, Plaintiffs filed the Initial Opposition against one of Defendant's trademark applications, (JSUF ¶ 56; *see also* Brownlee Dec., ¶ 7, Ex. C), thereby providing clear notice to Defendants of Plaintiffs' claims as a senior user.  Moreover, after the TTAB entered a default

judgment against Defendant, (JSUF ¶¶ 56–58), Defendant continued to use the mark regardless. It is also undisputed that in July 2017, Plaintiff sent a cease-and-desist letter to Defendant, which also put Defendant on notice of Plaintiff's mark and the "alleged infringing and illegal nature of Defendant's actions." (JSUF ¶ 63). Defendant opted to ignore this notice. Defendant cannot now undermine a finding that it acted with reckless disregard with evidence that it did not act with an intent to dilute Plaintiffs' marks. Defendant's conduct was clearly reckless. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 754 (2d Cir. 1996) ("Hilfiger's choice not to perform a full [trademark] search under these circumstances reminds us of two of the famous trio of monkeys who, by covering their eyes and ears, neither saw nor heard any evil. Such willful ignorance should not provide a means by which Hilfiger can evade its obligations under trademark law.").

## IV.   Plaintiffs Fail As A Matter Of Law To Establish Their State Unfair Competition Claim And That Claim Is Dismissed As Moot

To establish an unfair competition claim under New York State common law, Plaintiffs must establish bad faith on the part of the Defendant. *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir.1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith."); *MiniFrame Ltd. v. Microsoft Corp.*, No. 11 Civ. 7419 (RJS), 2013 WL 1385704, at *8 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 551 F. App'x 1 (2d Cir. 2013) ("[T]he gravamen of an unfair competition claim[, under New York law,] is the bad faith misappropriation of a competitor's commercial advantage." (citations omitted) (emphasis added)). As discussed at Part II.B.6. *supra*, there is a material factual dispute over whether Defendant's acted in bad faith. That issue with respect to an element of an unfair competition claim under New York State common law precludes the Court from granting summary judgment to Plaintiffs.

Nonetheless, the Court has already found in favor of Plaintiffs on their trademark infringement, trademark dilution, and federal unfair competition claims.  All three claims allow a prevailing plaintiff to seek injunctive relief against Defendant.  *See* 15 U.S.C. § 1116(a).  To the extent that Plaintiffs would also seek injunctive relief based on their New York State common law claim, such relief would be duplicative.[6]  In the context of compensatory damages, the Second Circuit has made clear that "[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery."  *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995).  Moreover, to the extent that Plaintiffs are harmed by Defendant's actions with respect to their common law claim for unfair competition, such harm would be remedied by injunctive relief pursuant to the Lanham Act.  Accordingly, having already found for Plaintiffs on the issue of liability with respect to their trademark infringement, trademark dilution, and federal unfair competition claims, no further relief can be afforded to Plaintiffs by finding Defendant liable for unfair competition under New York State common law. The Court therefore dismisses Plaintiffs' New York State common law unfair competition claim as moot.  See *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("There is [ ] no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a

---

[6] The Complaint also states that Plaintiffs, with respect to their New York common law claim, seek "an order granting Plaintiffs' damages and Defendant's profits stemming from its infringing activities and exemplary or punitive damages for Defendant's intentional misconduct."  (Compl. ¶ 80).  To the extent this may entitle Plaintiffs to relief beyond that available under the Lanham Act, Plaintiffs are precluded from obtaining monetary damages for their unfair competition claim under New York State common law.  To recover money damages for an unfair competition claim under New York State common law, a plaintiff must have proof of actual confusion.  *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995) ("In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief."); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 331 (S.D.N.Y. 2016) ("The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element . . . proof of actual confusion if money damages are sought." (internal quotation marks and citation omitted).  Discovery in this case has closed [ECF No. 31] and Plaintiffs have no evidence of actual confusion.  (*See* Pl. Mot. at 12).  Accordingly, Plaintiffs cannot recover money damages for their New York State unfair competition claim.

legally cognizable interest in the outcome." (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

## **CONCLUSION**

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment on the issue of liability is GRANTED with respect to their trademark infringement, trademark dilution, and federal unfair competition claims.  Plaintiffs' Motion for Summary Judgment on the issue of liability is DENIED with respect to its New York State unfair competition claim and that claim is DISMISSED without prejudice as moot.  Defendant's Cross-Motion for Summary Judgment is also DENIED in its entirety.

The parties are directed to confer and to submit a joint letter within 21 days after the date of this Opinion and Order addressing proposals for the remaining phase of this case.

The Clerk of Court is respectfully requested to close docket entries 36 and 38.


**SO ORDERED.**

**Date:  March 30, 2022**
      **New York, NY**
                                       **MARY KAY VYSKOCIL**
                                       **United States District Judge**