UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIESEL S.P.A. and DIESEL U.S.A., INC.,

Plaintiffs,

-against-

DIESEL POWER GEAR, LLC,

Defendant.

1:19-cv-09308 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

On October 8, 2019, Plaintiffs Diesel S.p.A and Diesel USA, Inc. (collectively, "Plaintiffs") commenced this action against Defendant Diesel Power Gear, LLC ("Defendant"). *See* ECF No. 1 ("Compl."). Plaintiffs allege that Defendant's use of DIESEL POWER GEAR and DIESELSELLERZ marks on or in connection with its business, website, and apparel or accessory products infringes Plaintiffs' DIESEL lifestyle brand and marks. *See id.* ¶¶ 8, 17, 22-23, 29, 32. On March 30, 2022, the Court granted partial summary judgment in favor of Plaintiffs, holding Defendant liable for trademark infringement, trademark dilution, and federal unfair competition. *See* ECF No. 54 ("Liability Opinion"). Now pending before the Court are the parties' cross motions for summary judgment on the issue of damages. *See* ECF Nos. 85, 92, 94. For the following reasons, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes the reader's familiarity with the undisputed facts and conclusions of law set forth in the Liability Opinion, which the Court incorporates herein. *See* Liability Opinion. In that opinion, the Court found Defendant liable for trademark infringement, trademark dilution, and federal unfair competition on multiple grounds. *See id.* Here, a brief summary of that opinion and the parties' submissions on the present motions will suffice.

In the Liability Opinion, the Court first ruled that Plaintiffs were entitled to summary judgment on a portion of their trademark infringement and dilution claims based on preclusion. *See id.* at 5-11.  The Court found that Defendant was precluded from relitigating the issues of whether Defendant's DIESEL POWER GEAR mark was likely to cause confusion or dilute Plaintiffs' DIESEL marks because Defendant had already defaulted on both issues before the Trademark Trial and Appeal Board ("TTAB").  *See id.* at 5-11.  As the Court observed, "at issue here [was] Defendant's use of the infringing marks on or in connection with Defendant's apparel and accessory products," and the prior TTAB adjudication between the parties involved the same cause of action and resulted in a final judgment on the merits against Defendant.  *Id.* at 8, 11. The Court therefore held that Defendant could not relitigate those issues.  *Id.*

Second, the Court ruled that, regardless of the TTAB judgment, Plaintiffs were entitled to summary judgment on their trademark infringement and federal unfair competition claims with respect to Defendant's use of both their DIESEL POWER GEAR and DIESELSELLERZ marks. *See id.* at 11-30.  Under Section 32(a) of the Lanham Act, the Court found that Plaintiffs' trademark registrations for their DIESEL marks are entitled to protection, and the balance of factors demonstrated a likelihood of confusion between the parties' marks under *Polaroid v. Polarad Electronics*, 287 F.2d 492 (2d Cir. 1961).  *See* Liability Opinion at 11-30.  The Court found that the parties' marks were confusingly similar "in light of the way in which the marks are actually displayed in their purchasing context," *id.* at 14 (quoting *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 538 (2d Cir. 2005)), including Defendant's use of the marks on its physical storefront and website domains, *id.* at 15-17.  The Court also rejected Defendant's argument that its use of the DIESEL marks is protected fair use.  *See id.* at 26-30.

Third, the Court ruled that Plaintiffs were entitled to summary judgment on their trademark dilution claim. *See id*. at 30-41.  In doing so, the Court found that Defendant's infringement was willful because Defendant had acted with reckless disregard of Plaintiffs' DIESEL trademarks. *See id.* at 38-40.  The Court therefore granted summary judgment on liability in favor of Plaintiffs and denied Defendant's cross-motion. *See generally* Liability Opinion.[1]  The Court also ordered the parties to propose next steps for the remaining phase of the case. *See id.* at 43.

On June 14, 2022, the parties requested leave to move for summary judgment as to damages. *See* ECF Nos. 64, 69.  Both parties "agree[d] that summary judgment on the issue of damages is proper, given that there are no genuine issues of material fact to be tried" and their dispute instead "centers around the proper computation of damages, including any reasonable deductions that Defendant may be entitled to take, which is a question of law."  ECF Nos. 68, 72.  On September 2, 2022, the Court granted the parties' request for leave to file summary judgment motions and for the Court to adjudicate damages on the existing record of undisputed facts.  ECF No. 76.  Following this order, on September 7, 2022, Defendant filed a letter-motion requesting the Court opine on "the precise scope of products on its website that are infringing," ECF No. 77, which the Court denied that same day as "an improper motion for re-argument" of the Court's liability determination, ECF No. 78.  The case was subsequently reassigned to the undersigned on September 26, 2022. *See* ECF No. 79.

On December 1, 2022, the parties filed a joint statement of undisputed facts (ECF Nos. 86, 87 ("JSOF")) and cross-motions for summary judgment as to damages.  Plaintiffs filed

---

[1] The Court dismissed Plaintiffs' *state* law unfair competition claim as moot. *See* Liability Opinion at 41-43.

their summary judgment motion (ECF No. 85), opening brief (ECF Nos. 88, 89 ("Pls. Br.")), and supporting declaration, (ECF No. 91), while Defendant filed a six-page document captioned "motion for summary judgment" (ECF Nos. 92, 94 ("Df. Br.")),[2] its own statement of undisputed facts (ECF Nos. 95, 96 ("Df. SOF")), and supporting declarations (ECF Nos. 95-1, 95-2, 96-1, 96-2).  On January 6, 2023, Plaintiffs opposed Defendant's motion (ECF Nos. 100, 101 ("Pls. Opp.")) and filed a counter-statement of undisputed facts (ECF Nos. 97, 98, ("Pls. Counter-SOF")), a statement of additional undisputed facts (ECF No. 99 ("Pls. Supp. SOF")), and a declaration (ECF No. 102).  Defendant opposed Plaintiffs' motion (ECF Nos. 103, 104 ("Df. Opp.")) and filed a statement of additional undisputed facts (ECF No. 105 ("Df. Supp. SOF")) and declaration (ECF No. 106).  On January 20, 2023, Plaintiffs filed their reply (ECF No. 109 ("Pls. Reply")) and counter-statement to Defendant's additional undisputed facts (ECF No. 108 ("Pls. Counter-Supp. SOF")), and Defendant filed its reply (ECF No. 107 ("Dfs. Reply")).  The parties' cross-motions for summary judgment as to damages are therefore fully briefed.

## DISCUSSION

The Court incorporates the summary judgment standard from the Liability Opinion.  *See* Liability Opinion at 4-5; *see also* Fed. R. Civ. Pro. 56(a).  For purposes of damages, once liability is established under 15 U.S.C. § 1114, and "subject to the principles of equity," a plaintiff is "entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  When assessing a defendant's profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all

---

[2] Despite the Court's repeated orders that the parties consult and ensure compliance with the applicable rules when filing their summary judgment papers (*see, e.g.*, ECF Nos. 60, 76), Defendant did not file a "notice of motion" as required by Local Civil Rule 7.1(a)(1) of the Southern District of New York.  Nonetheless, the Court will look beyond this deficiency and construe Defendant's submission as a motion for summary judgment.

elements of cost or deduction claimed." *Id.* This scheme "allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant." *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) (internal citations omitted). The defendant "must prove not only that it has borne the particular cost or expense but also that the cost or expense is attributable to its unlawful sales." *Manhattan Indus. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989). Thus, "a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it." *Am. Honda Motor Co.*, 918 F.2d at 1063. In the event that recovery based on profits is either "inadequate or excessive," however, "the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a).

The parties do not dispute these legal standards, that damages can be resolved on summary judgment in this case, or that Plaintiffs are entitled to an award based on Defendant's profits. *See generally* Pls. Br.; Df. Br.; ECF Nos. 68, 72. Their dispute instead concerns the computation of those profits. Plaintiffs argue that the undisputed facts stipulated by the parties establish Defendant's gross and net sales. *See* Pls. Br. at 8-9. Plaintiffs further argue that Defendant has not proven any deductible costs or expenses, and Plaintiffs are therefore entitled to net sales equal to $59,117,856.83. *See id.* at 4-9; Pls. Reply at 3-5. Defendant argues that its profits should be based on a smaller subset of its sales, and that the Court should deduct a flat rate of Defendant's business-wide expenses from those profits. *See* Df. Br. at 4-6; Df. Reply at 2-3. The Court will address the parties' arguments in turn.

## 1. Threshold Principles of Equity

As a threshold issue, the Court finds that Defendant's profits are an appropriate basis for damages in this case. The Second Circuit has articulated three rationales for awarding profits under the Lanham Act: "(1) to avoid unjust enrichment; (2) as a proxy for plaintiff's actual damages; and (3) to deter infringement." *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 212 (2d Cir. 2019). Under all three rationales, the court "must . . . balance equitable factors in assessing the propriety of a profits award." *Id.* at 214. These factors include but are not limited to: "(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by plaintiff; and (5) plaintiff's clean (or unclean) hands." *Id.* The Supreme Court has also held that "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1497 (2020). A defendant's mental state is willful if he acts with reckless disregard. *See 4 Pillar Dynasty LLC*, 933 F.3d at 209-10; *see also Romag Fasteners, Inc.*, 140 S. Ct. at 1498 (J., Sotomayor, concurring).

Here, Defendant does not dispute that its profits are the appropriate basis for damages. Plaintiffs moved for summary judgment on this issue, and properly recited and applied each equitable factor. *See* Pls. Br. at 4-6. Defendant did not address or otherwise oppose this branch of Plaintiffs' motion. *See generally* Df. Opp. Defendant similarly moved for summary judgment seeking an award for Plaintiffs based on Defendant's profits. *See generally* Df. Br. The Court therefore finds that Defendant agrees with, or has waived any objection to, a profit award. *See Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 103 (2d Cir. 1989) (determining that the parties agreed to the defendant's profits as the measure of damages); *see also Crowley v.*

*Billboard Magazine*, 576 F. Supp. 3d 132, 148 n.6 (S.D.N.Y. 2021) (granting summary judgment with respect to issue that opposing party "did not address"); *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 367 n.40 (2d Cir. 2021) (concluding that party waived argument by failing to oppose it at summary judgment).

Even if Defendant had opposed a profit award, the Court would find that "principles of equity" warrant such an award here.  15 U.S.C. § 1117(a).  First, as the Court already determined in the Liability Opinion, Defendant acted willfully as a matter of law.  *See* Liability Opinion at 38-41.  The Court found that Defendant's employee with primary responsibility for creating the Diesel Power Gear Products designs had actual knowledge of Plaintiffs and the DIESEL marks in 2013, when Defendant's business was established and began using the infringing marks.  *Id.* at 39.  Plaintiffs' DIESEL Registrations have been on the Principle Register since 1988 and many are designated as incontestable.  *Id.*  It is undisputed that Plaintiffs sent a cease-and-desist letter to Defendant in July 2017, and thus put Defendant on further notice of Plaintiffs' mark and the "infringing and illegal nature of Defendant's actions," yet Defendant continued to use the mark regardless of the notice.  *Id.* at 39-41.  It is also undisputed that Defendant continued to sell the infringing products on its website even *after* the Court issued the Liability Opinion.  JSOF ¶ 18; ECF No. 91 ¶ 22.  On this record, Defendant's state of mind and singular role in the infringing conduct weigh decidedly in favor of a profit award.  *See Romag Fasteners, Inc.*, 140 S. Ct. at 1497 (holding that "a trademark defendant's mental state is a highly important consideration"); *see, e.g.*, *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-cv-03669 (DLC), 2015 WL 3916271, at *7 (S.D.N.Y. June 25, 2015) (finding the plaintiffs "plainly entitled to disgorgement of [the d]efendants' profits" where, "well after the Liability Opinion," the defendants were "continuing to offer and sell their infringing products"); *7-Eleven, Inc. v. Z-*

*Eleven Convenience Store Inc.*, No. 16-cv-04116 (RRM) (SJB), 2018 WL 1521859, at *8

(E.D.N.Y. Jan. 17, 2018) (concluding that the defendant acted in bad faith where it "continued its

infringement . . . after the lawsuit was initiated, and even after the District Court found it liable

for infringement"), *report and recommendation adopted*, No. 16-cv-04116 (RRM) (SJB), 2018

WL 1466799 (E.D.N.Y. Mar. 26, 2018).

     The remaining equitable factors similarly weigh in favor of a profit award.  In light of the

Court's determination in the Liability Opinion (at 12-22) that "Defendant's DIESEL POWER

GEAR and DIESELSELLERZ marks are confusingly similar to Plaintiffs' marks," the Court

may reasonably infer that Defendant "benefited from the unlawful conduct," *4 Pillar Dynasty*

*LLC*, 933 F.3d at 214; *see Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 466 (S.D.N.Y.

2017) ("In light of the likelihood-of-confusion analysis above, there is no doubt that Excell

benefited from its unlawful conduct[.]").  Plaintiffs assert, and Defendant does not dispute, that

other remedies would not reasonably compensate Plaintiffs for Defendant's conduct, nor is there

sufficient support in the record for an alternative remedy.  *See* Pls. Br. at 5-6.  Finally, there is no

indication that Plaintiffs delayed in protecting their rights or have unclean hands.  *See id.*  On

balance, the Court finds that the equitable factors support the "propriety of a profits award."

*4 Pillar Dynasty LLC*, 933 F.3d at 214.

     Thus, based on the parties' agreement and the undisputed facts, Plaintiffs have

"adequately demonstrated an entitlement to an award of profits pursuant to Section 1117(a)."

*Coty Inc.*, 277 F. Supp. 3d at 466.

### 2.  Gross Sales

     To recover a defendant's profits, the plaintiff bears "the initial burden of proving gross

sales."  *Am. Honda Motor Co.*, 918 F.2d at 1063 (internal citation omitted).  Here, Plaintiffs seek

profits from the sale of apparel and wearable accessories on Defendant's website from 2013 through mid-October 2022.  *See* Pls. Br. at 7-8; JSOF ¶ 17; *see also* Df. Br. at 6.  It is undisputed based on the parties' joint statement of facts that Defendant's gross sales for apparel and wearable accessories sold on Defendant's website during this period equals $65,057,856.53.  *See* JSOF ¶¶ 15, 17.

Defendant does not dispute the amount of its gross sales from apparel and wearable accessories, nor the applicable time period of infringing sales.  *See generally* Df. Br.  Defendant instead argues that, based on the Liability Opinion, it is only liable for "apparel that is *marked on the exterior with the word 'diesel*,'" and its profits should be limited to those products.  Df. Br. at 6 (italics added); Df. Opp. at 1-2.  Defendant's argument fails for three reasons.  First, this argument is one paragraph long in Defendant's briefs, it does not reference any portion of the Liability Opinion, and it does not cite any legal authority.  *See* Df. Br. at 6; Df. Opp. at 1-2.  "Courts need not consider cursory arguments of this kind, and the Court declines to do so here." *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 432 n.17 (S.D.N.Y. 2019) (internal citation omitted); *see Allstate Vehicle & Prop. Ins. Co. v. Mars*, 533 F. Supp. 3d 71, 82 (E.D.N.Y. 2021) (declining to consider unsupported, cursory argument).

Second, even if considered, Defendant's argument that the infringing products are limited to apparel marked on the outside with the word "diesel" is not supported by the record.  At the liability phase, the parties actively litigated the scope of the infringing products.  Defendant argued at that time that the alleged scope of infringing goods was broad, such that the issues in this case were not precluded by Defendant's default before the TTAB involving purportedly narrower issues.  ECF No. 48 at 8.  In response, Plaintiffs clarified that their claim was based on "Defendant's use of the Infringing Marks on or in connection with Defendant's apparel and

accessory products."  ECF No. 51 at 3.  Plaintiffs emphasized that this meant "Defendant's use of the Infringing Marks *in connection with apparel, related goods, and online retail services relating to the same,*" *id.*, including use of the marks "on Defendant's Diesel Power Gear Products themselves, on the hang tabs and labels thereof, in connection with Defendant's Website, social media handles, and in connection with its advertisements and promotions . . . ."  ECF No. 46 at 5; *see also* Compl. ¶ 23 (alleging infringement "on or in connection with Defendant's business(es), online retail services via the Websites, and Defendant's apparel and accessory products").  The Court agreed with Plaintiffs, finding Defendant liable for using "the infringing marks on *or in connection with* Defendant's apparel and accessory products."  Liability Opinion at 8 (italics added); *see also id.* at 2.  The Court based its liability determination on the full record, including Defendant's use of the marks in connection with its online retail services and in the domain name for its websites.  *Id.* at 14-17.  The infringing products from which Plaintiffs seek to recover profits fall squarely within the Liability Opinion.

Finally, Defendant's argument is an improper attempt to re-argue the Court's prior decisions.  As discussed above, the Court considered and decided the issue of liability on the first phase of summary judgment.  *See* Liability Opinion.  Months after the Court issued the Liability Opinion, Defendant raised precisely the same argument it raises now in a letter-motion to the Court, which the Court promptly denied as an "improper motion for re-argument."  ECF No. 78.  The time to move for reconsideration has long passed.  After receiving unfavorable rulings before the TTAB, in the Liability Opinion, and on its subsequent motion for re-argument, Defendant is not entitled to a fourth bite at the apple now.  *See, e.g.*, *River Light V, L.P.*, 2015 WL 3916271, at *4 (rejecting arguments involving "issues relevant to Defendants' liability, not the appropriate measure of damages," that were "settled by the Liability Opinion").

Although the sum of Defendant's gross sales of infringing goods is substantial, it reflects the extent of Defendant's willful infringement that benefited Defendant for years and continued even after the Court found Defendant liable.  Notably, these gross sales are substantially less than Defendant's undisputed gross sales for all products sold on its website from the same period, which total $276,111,865.84.  JSOF ¶ 16.  The award Plaintiffs seek is also "narrower than the damages" that they may be entitled to under Section 1117(a), which could, for example, include profits from the infringing goods Defendant sold at its physical store that Plaintiff has elected not to pursue.  Pls. Br. at 8.

Accordingly, based on the undisputed facts in the parties' joint statement, Plaintiffs have satisfied their burden of proving Defendant's gross sales in an amount equal to $65,057,856.53. *See* JSOF ¶¶ 15, 17.

### 3.  Costs and Expenses

Since Plaintiffs have proven gross sales, Defendant "bears the burden of demonstrating deductions for costs and expenses: [i]t must prove not only that it has borne the particular cost or expense but also that the cost or expense is attributable to its unlawful sales."  *Manhattan Indus.*, 885 F.2d at 7.  If the defendant seeks to deduct overhead expenses, as Defendant does here, it must show "what overhead expense categories (such as rent, business, entertainment, personnel and public relations) are actually implicated by the production of the infringing product."  *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 105 (2d Cir. 1999) (applying standard in the Copyright Act context); *accord River Light V, L.P.*, 2015 WL 3916271, at *7 (applying *Hamil* to trademark infringement).  Thus, the defendant "shoulders the burden of demonstrating a 'sufficient nexus between each expense claimed and the sales of the unlawful goods' before it may deduct overhead expenses from its profits."  *Hamil Am., Inc.*, 193 F.3d at 107 (quoting *Manhattan*

*Indus.*, 885 F.2d at 8).  If such a nexus exists, the defendant then "bears the burden of proposing a fair and acceptable formula for allocating a portion of overhead expenses to the infringing items at issue." *Id.*

Where infringement is willful, as it is here, courts must assess the claimed expenses with "particular rigor." *Id.*  Under this "heightened scrutiny," courts must give "extra scrutiny to the categories of overhead expenses claimed by the infringer to ensure that each category is directly and validly connected to the sale and production of the infringing product." *Id.*  "Unless a strong nexus is established, the court should not permit a deduction for the overhead category." *Id.*  Courts also "should not hesitate to reject a formula" that allows for the deduction of more overhead than was "directly implicated in the manufacture of the infringing product." *Id.*

Here, Defendant seeks to deduct a flat rate of all costs and expenses borne by its entire business from the net sales of the infringing goods.  *See* Df. Br. at 5-6.  "Because all revenue for Diesel Power Gear's business is from merchandise sales to promote truck giveaways," Defendant asserts, "the yearly profit figures have a deduction for all expenses built into them: cost of merchandise; shipping costs; marketing; buying, modifying, and selling giveaway trucks; personnel; support vendors; etc." *Id.* at 5.  Defendant thus proposes that the Court: "(1) determine profit; (2) determine net sales; (3) determine net sales that are infringing . . . ; and (4) multiply the profit by the fraction of net sales that are infringing." *Id.*

The parties agree in their joint statement of facts that Defendant incurred costs equal to discounts and returns for the infringing products.  *See* JSOF ¶¶ 15, 17; Pls. Br. at 1-2, 8.  This deduction is consistent with usual awards under the Lanham Act.  *See 4 Pillar Dynasty LLC*, 933 F.3d at 214 n.11 ("Generally speaking, an award of an infringer's profits under the Lanham Act can be expected to refer to net profits, but the infringer bears the burden 'to prove any deductions

for its costs from the gross revenues attributable to its [infringement].'" (quoting *Manhattan Indus., Inc.*, 885 F.2d at 7)).  The Court will therefore deduct discounts and returns ($5,939,999.70) from gross sales ($65,057,856.53), resulting in net sales equal to $59,117,856.83.  *See* JSOF ¶¶ 15, 17.

Aside from the deduction of discounts and returns, the Court finds that Defendant has not sustained its burden to show any other deductible costs or expenses for several reasons.  *See* 15 U.S.C. § 1117(a).  To begin, Defendant's argument for deductible costs and expenses is cursory and lacking sufficient support in fact or law.  Defendant does not cite any legal authority to support the assertion that the Court may deduct a percentage of all company-wide costs and deductions from gross sales under the Lanham Act.  Defendant does not identify a nexus between each category of expense claimed, nor even identify all such categories, instead referring to an indefinite set of expenses ending with "etc."  Df. Br. at 5.  Defendant also does not substantiate its proposed formula with any authority, perform the proposed calculation, or provide the Court with any total amount for costs, expenses, or profit.  The cursory and undeveloped nature of Defendant's argument would alone be grounds to reject it.  *See Rodriguez*, 412 F. Supp. 3d at 432 n.17 (declining to "consider cursory arguments"); *Allstate Vehicle & Prop. Ins. Co.*, 533 F. Supp. 3d at 82 (same).

Even if the Court considers Defendant's argument and independently looks to the underlying facts, Defendant still has not shown that each category of "cost or expense is attributable to its unlawful sales."  *Manhattan Indus.*, 885 F.2d at 7.  Defendant makes no attempt to identify direct costs attributable to the infringing goods, such as the specific costs from manufacturing and selling the infringing goods.  At most, Defendant has submitted four spreadsheets, including one summary spreadsheet containing purported "profit and loss

statements for 2015-2019," a subset of the years at issue.  ECF No. 106-1.  But Plaintiffs raise a

host of objections to this document, including that it contains data Defendant did not produce in

discovery, that Defendant admits is inaccurate and incomplete, and that lacks any proffered

foundation for admission as a business record.  *See* Pls. Counter-SOF ¶¶ 19, 23-25.

Even if the Court were to look beyond Plaintiffs' objections, however, Defendant still has

not specifically linked any costs in its "profit and loss statements" to the infringing goods.  The

document contains fields for aggregate "clothing" costs, and the Court presumes that some

portion of those costs are attributable to Defendant's infringing apparel and wearable

accessories.  ECF No. 106-1.  But those costs are over-inclusive because they encompass sales

from Defendant's physical store, for which Plaintiffs do not seek an accounting.  *See id.*  The

cost data is also of questionable validity – it lists *negative* clothing costs equal to $165,865.95 in

2014.  *Id.*  And the data appears to be inconsistent with, or at least not easily aligned with, the

undisputed facts that the parties stipulated to in their joint statement; for example, the various

"income" amounts contained in the spreadsheet for Defendant's Diesel Power Gear products do

not readily match any of the gross, net, or total sale figures for Defendant's Diesel Power Gear

products in the joint statement of undisputed facts.  *Compare id. with* JSOF ¶¶ 16-17.  Defendant

has not sufficiently explained or justified this profit and loss data.  The Court therefore finds that

Defendant has not met its burden to prove any deductible costs or otherwise created a triable

issue of fact on this matter.  *See, e.g.*, *Victorinox AG v. The B & F Sys., Inc.*, No. 13-cv-04534

(JSR), 2015 WL 9256944, at *2 (S.D.N.Y. Dec. 15, 2015) ("Defendants have failed to carry their

burden, or even to raise any triable question of fact, with respect to costs or deductions to be

subtracted from the sales data."), *aff'd*, 709 F. App'x 44 (2d Cir. 2017); *Coty Inc.*, 277 F. Supp.

3d at 467 ("[The defendant] provided no detail as to what the columns were or how the figures

within the columns were calculated. . . . That does not suffice to carry [its] burden, as an infringing defendant may not prove deductible costs 'by records showing only a vague, undifferentiated category of expenses.'" (internal citations omitted)); *E. Mishan & Sons, Inc. v. Novel Brands LLC*, No. 18-cv-02932 (VSB) (SN), 2020 WL 9815178, at *5 (S.D.N.Y. Feb. 13, 2020) ("Though the Court assumes that Defendant spent some amount of money to purchase the goods it sold, Defendant has not carried its burden to establish the amount of this expense."), *report and recommendation adopted*, No. 18-cv-02932 (VSB), 2022 WL 407393 (S.D.N.Y. Feb. 10, 2022).

With respect to overhead expenses, Defendant similarly fails to prove a "sufficient nexus between each expense claimed and the sales of the unlawful goods." *Manhattan Indus.*, 885 F.2d at 8. For example, Defendant has not set forth facts establishing a nexus between Defendant's shipping expenses, marketing, warehouse space, personnel, or support vendors. The closest Defendant comes to proving an overhead expense involves Defendant's diesel truck giveaways. In a declaration that was prepared for the instant motion, Defendant's chief operating officer states that Defendant provided an entry into a drawing to win custom-built diesel trucks for every five dollars spent on apparel and gear on its website, and that Defendant's principal revenue stream comes from sales of apparel and gear promoted and used for recreational diesel trucks. ECF No. 95-1 ¶¶ 4-5; Pls. Counter-SOF ¶ 20.

Aside from this testimony, Defendant has not submitted evidence of any specific facts proving that the giveaways are "directly and validly connected to the sale and production of the infringing product[s]" at issue. *Hamil Am., Inc.*, 193 F.3d at 107; *see Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (affirming district court's decision not to deduct costs based on corporate president's testimony and "a smattering of bills"), *abrogated on other*

*grounds by 4 Pillar Dynasty LLC*, 933 F.3d at 214; *see Fendi Adele S.r.l. v. Burlington Coat Factory Warehouse Corp.*, No. 06-cv-00085 (LBS) (MHD), 2010 WL 11586698, at *7 (S.D.N.Y. Aug. 9, 2010) (rejecting advertising expenses where the defendant "assert[ed] in a conclusory manner that the advertisements 'boost total store sales'" but otherwise fell "far short of the 'strong nexus' required to permit the deduction of an overhead expense").  Nor has Defendant shown a "strong nexus" between any other specific expense category and the infringing apparel and wearable accessories.  *Hamil Am., Inc.*, 193 F.3d at 107 ("Unless a strong nexus is established, the court should not permit a deduction for the overhead category.").

Even had Defendant shown a strong nexus between its truck giveaway (or other expense) and the infringing goods, Defendant has not proposed an adequate formula for allocating a portion of overhead expenses "directly implicated in the manufacture of the infringing product." *Id.* at 107.  Defendant proposes a flat rate to deduct a portion of *all* company-wide expenses, including expenses incurred from the truck giveaway, from the net sales of its infringing goods. *See* Df. Br. at 5.  But this formula is overinclusive because it contains expense categories that Defendant has made no attempt to show are "directly implicated" by the production and sale of infringing goods.  *Hamil Am., Inc.*, 193 F.3d at 107.  Nor are there facts in the record to support the conclusion that a flat rate reduction of all of Defendant's business expenses would be appropriate.  The evidence does not distinguish between expenses from the infringing products and Defendant's other products in any way.  As such, the Court "cannot conclude that it is reasonable for [Defendant] to allocate the same percentage of these costs to their sale of infringing goods as they do to their sale of other merchandise."  *Fendi Adele S.R.L.*, 2010 WL 11586698, at *8 (rejecting allocation of business-wide expenses based on flat rate across all sales); *Manhattan Indus.*, 885 F.2d at 8 (rejecting formula based on "data pertaining to [the

defendant's] overall selling expenses"); *MPD Accessories B.V. v. Urb. Outfitters*, No. 12-cv-06501 (LTS) (KNF), 2014 WL 2440683, at *1 (S.D.N.Y. May 30, 2014) (declining to deduct a percent of business-wide expenses from net sales on summary judgment).

Courts have consistently held that a defendant is not entitled to deduct expenses where the defendant fails to prove *either* a sufficient nexus between their expenses and sales, *or* an adequate formula for allocating their expenses; here, Defendant has proved neither.  In *Manhattan Industries v. Sweater Bee by Banff, Ltd.*, for example, the plaintiff sought an accounting of the defendant's profits under the Lanham Act.  885 F.2d at 2.  The Second Circuit concluded that the record contained "grossly inadequate evidence of [the defendant]'s overhead" because, like Defendant here, the defendant offered "only data pertaining to [its] overall selling expenses."  *Id.* at 8.  Such records failed to "indicate whether and to what extent [the defendant]'s expenses [were] attributable to its [infringing] production."  *Id.*  The Second Circuit also rejected the defendant's formula, like that proposed here, which would allocate expenses using "percentages . . . derived by dividing [the defendant]'s total overhead by its total net sales for all its lines, including [the infringing product]."  *Id.*  While the court noted "some support" for approximating overhead if the defendant first shows that reliable data is unavailable, the Second Circuit observed that the defendant had not made such a showing there, and the Court finds that Defendant has similarly not made that showing here.  *Id.*  The Second Circuit therefore concluded that the defendant was "not entitled to the overhead expenses deduction that it claims."  *Id.*

Likewise in *MPD Accessories B.V. v. Urban Outfitters*, the plaintiff moved for summary judgment seeking an award of the defendants' profits based on the sale of infringing apparel. 2014 WL 2440683, at *1.  Because the defendants provided purchase orders and invoices

17

sufficient to calculate direct costs, including the number of units sold and costs per unit, the court deducted proven costs from the defendants' gross sales.  *Id.* at *8.  With respect to overhead costs, however, the defendants there, like Defendant here, provided only the percentage of business-wide net sales "consumed by overhead expenses, and argue[d] that [the p]laintiff's damages award should therefore be limited to those specified percentages of the net sales for the infringing [products]."  *Id.* at *9.  The court found the defendants' evidence insufficient, and rejected the defendants' formula based on a percentage of company-wide expenses – the same formula Defendant proposes here.  *Id.* at *8-9.  Observing that Rule 56 "imposes the obligation of producing evidence sufficient to carry a party's burden on a summary judgment motion," the court concluded that "the [d]efendants' evidentiary proffers of net income calculations are not sufficiently tied to specific general overhead categories, nor to overhead incurred in connection with the infringing activities."  *Id.* at *9.  The court thus ruled that the defendants "failed to sustain their evidentiary burden with respect to allocable overhead, and therefore their claimed overhead costs will not be deducted in calculating [the p]laintiff's damages award."  *Id.*  Here too, Defendant has failed to satisfy its burden on summary judgment, and is thus not entitled to deduct its claimed expenses.

Similarly, in *River Light V, L.P. v. Lin & J International, Inc.*, the court granted the plaintiff summary judgment for liability, and the parties moved for damages.  2015 WL 3916271, at *2.  While the defendant submitted some evidence of deductible costs, the court found that it reflected "aggregate costs borne by [the defendant], not costs associated with the manufacture, marketing, and sale of the counterfeit goods."  *Id.* at *7.  The court observed that "[r]educing gross sales of the products at issue by total costs of a business is illogical," and that the defendants "made only a cursory – and wholly unsubstantiated – attempt to connect the

deductions sought to the specific infringing activity." *Id.* The court therefore found, as the Court does here, that the defendants "failed to carry their burden of establishing any costs to be deducted from their gross sales." *Id.*

Courts in this Circuit have repeatedly reached similar outcomes on damages inquests and after trial. *See, e.g.*, *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-cv-06239 (PKC), 2022 WL 13848274, at *7 (S.D.N.Y. Oct. 24, 2022) (upholding jury award because the defendant's theory that "expenses and costs attributable to infringing goods were precisely the same percentage as their contribution to gross revenue" was "without merit"); *Coty Inc.*, 277 F. Supp. 3d at 467 (concluding that the defendant failed to prove deductions based on "only a vague, undifferentiated category of expenses" (internal citation omitted)); *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 46 F. Supp. 3d 255, 292 (S.D.N.Y. 2014) ("[B]esides asserting these costs, Defendants provided neither documentation nor analysis of how they were calculated, besides the Solar Time invoice summaries. Without this information, Defendants have not proven direct costs under the Lanham Act, and it is not possible for the Court to conduct the two-step analysis required for overhead expenses." (internal record citation omitted)), *rev'd in part on other grounds on reconsideration*, No. 12-cv-05423 (LAP), 2015 WL 150756 (S.D.N.Y. 2015); *Fendi Adele S.R.L.*, 2010 WL 11586698, at *7-8 (concluding that the defendants did not "properly document the[ir] expenses" nor would it be "reasonable for defendants to allocate the same percentage of these costs to their sale of infringing goods as they do to their sale of other"); *see also Bruce Kirby, Inc. v. Laserperformance (Eur.) Ltd.*, No. 13-cv-00297 (JAM), 2021 WL 328632, at *15 (D. Conn. Feb. 1, 2021) ("Because defendants have not sufficiently substantiated the amount and connection between these general expenses and the infringing sales of Lasers, a reduction in QMI's gross sales by the per unit labor and overhead

costs is not warranted."), *aff'd in part and vacated in part on other grounds sub nom., Est. of Kirby v. LaserPerformance (Europe) Ltd.*, No. 21-519, 2023 WL 5319216 (2d Cir. Aug. 18, 2023).

For all of these reasons, the Court finds that a deduction in Defendant's gross sales for discounts and returns is appropriate, resulting in net sales equal to $59,117,856.83, but that Defendant has otherwise failed to sustain its burden to prove additional deductible costs and expenses or to create a triable issue of material fact in that regard.  *See* 15 U.S.C. § 1117(a).

### 4. **Inadequate or Excessive Award**

Finally, the Lanham Act entrusts courts with considerable discretion to modify an award that is based on the infringer's profits.  The Act provides that, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  15 U.S.C. § 1117(a).  In either circumstance, the sum "shall constitute compensation and not a penalty."  *Id.*  The Second Circuit has construed this authority broadly to mean "[u]nlimited enhancement or reduction of an award based on defendant's profits is permitted in order to correct inadequacy or excessiveness."  *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 109 (2d Cir. 1988); *accord L & L Wings, Inc. v. Marco-Destin, Inc.*, 756 F. Supp. 2d 359, 367 (S.D.N.Y. 2010) (applying standard on summary judgment).  As such, "courts should consider not only whether an enhanced profits award is appropriate, but also whether the disgorgement of *all* profits attributable to the infringing product" is warranted. *4 Pillar Dynasty LLC*, 933 F.3d at 214.

Here, the full disgorgement of Defendant's profits would undoubtably serve as a strong deterrent, prevent any unjust enrichment, and compensate Plaintiffs for Defendant's ill-gotten

gains.  The Court has found Defendant culpable for infringing Plaintiffs' marks over many years.
Defendant admits to continuing to sell infringing products even after the Court's liability
determination.  *See* JSOF ¶ 18.  Defendant also does not even argue that a full accounting would
be "excessive" in any of its submissions to the Court.  *See generally* Df. Br.; Dr. Opp.; Df.
Reply.

However, in this case, the Court finds that an award of less than Defendant's net sales is
warranted to produce a "just" result.  15 U.S.C. § 1117(a).  First, Defendant's willful conduct is
far from the most egregious infringement contemplated by the Lanham Act, and there is no
evidence of actual consumer confusion in this case.  *See 4 Pillar Dynasty LLC*, 933 F.3d at 214
(concluding that "the [d]istrict [c]ourt could have concluded in its discretion that an award of
something less than full profits would have had an adequate deterrent effect . . . where the
evidence of willful conduct was less than overwhelming . . . [and] Plaintiffs introduced no
evidence of actual consumer confusion"); *see Stuart v. Collins*, 489 F. Supp. 827, 834 (S.D.N.Y.
1980) (finding a full profit award excessive where the defendant's conduct was "far from being
the most reprehensible kind of wilful [sic] infringement").

Second, the "strength of the link between the infringement" and Defendant's profits is not
equal across all of the infringing products.  *Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d
98, 104 (S.D.N.Y. 1998), *aff'd*, 201 F.3d 431 (2d Cir. 1999).  As Defendant suggests, the link is
more peripheral with respect to products that, although infringing, do not display the word
"diesel" on their exterior.  *See generally* Df. Br.; *see, e.g.*, *Lurzer GMBH*, 75 F. Supp. 2d at 104
(finding that "use of the 'Archive' mark in advertising for most of these issues was peripheral
. . . . [which] suggests that awarding a full accounting is unwarranted").

Finally, Plaintiffs have not presented direct evidence of damage to their business, and Defendant has submitted some – albeit deficient – evidence of its costs and expenses.  *See also L & L Wings, Inc.*, 756 F. Supp. 2d at 367 (finding equities weighed against an accounting where it was "not at all certain that Defendants['] continued use of the Mark led to any substantial additional profits").  It is reasonable for the Court to assume that Defendant spent at least a portion of its net infringing sales on the production and sale of the infringing products, as well as other business expenses that contributed to those goods, and the Court has considered and estimated such costs as part of its reduction.  *Cf. E. Mishan & Sons, Inc.*, 2020 WL 9815178, at *5 (noting that "the Court assumes that Defendant spent some amount of money to purchase the goods it sold").  The Court has considered the peculiar model of Defendant's business, which involves investing in and giving away a substantial number of custom-built diesel trucks.  *See* Pls. Counter-SOF ¶ 22.  After reviewing the financials presented, the Court has also considered that Defendant is a smaller business vis a vis the magnitude of the award requested by Plaintiffs.

On the specific facts of this case, to award damages of approximately $59 million would be "excessive" against Defendant and an unwarranted windfall to Plaintiffs.  15 U.S.C. § 1117(a); *see 4 Pillar Dynasty LLC*, 933 F.3d at 214 (noting courts should avoid "giving plaintiffs a lottery-level windfall"); *see Merck Eprova AG v. BrookStone Pharm., LLC*, 920 F. Supp. 2d 404, 430 (S.D.N.Y. 2013) (same).  Considering these equitable factors, the evidence in the record, and relevant authorities, the Court finds that an 80 percent reduction is just.  *See* 15 U.S.C. § 1117(a).  This will result in an award that is substantial but not excessive, that better captures the equities of this case, and that more reasonably approximates net profits based on the evidence before the Court.  *See, e.g.*, *Lurzer GMBH*, 75 F. Supp. 2d at 104-05 ("[A] fifty per[]cent reduction will produce a result far more in keeping with both the equities of the case

and with a fair approximation of net profits."); *Stuart*, 489 F. Supp. at 834 (reducing the profit award by approximately 43 percent); *cf. Victorinox AG*, 2015 WL 9256944, at *3 (enhancing profit award by 300 percent on summary judgment), *aff'd*, 709 F. App'x at 47, 50-51 (affirming the district court's determination of the profit award).

Accordingly, the Court reduces Defendant's net sales ($59,117,856.83) by 80 percent, resulting in a total award of $11,823,571.37.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part, and Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiffs are granted an award based on Defendant's net profits in the amount of $11,823,571.37.

IT IS FURTHER ORDERED that the parties shall file a joint letter no later than **21 days** after the date of this Opinion and Order proposing any remaining steps for this case.

The Clerk of Court is respectfully directed to terminate ECF Nos. 85, 92, and 94.

Dated:  September 5, 2023
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge